**BISMARCK BAPTIST CHURCH and Church Mutual Insurance Company, Plaintiffs and Appellants,**

v.

**WIEDEMANN INDUSTRIES, INC., et al., Defendants and Respondents.**

**Civ. No. 8723.**

Supreme Court of North Dakota.

Aug. 30, 1972.

Rehearing Denied Nov. 1, 1972.

Thompson, Lundberg & Nodland, Bismarck, for plaintiff and appellant Bismarck Baptist Church.

Frederick E. Saefke, Jr., Bismarck, for plaintiff and appellant Church Mutual Insurance Co.

Pearce, Engebretson, Anderson, Schmidt & Thames, Bismarck, for defendant and respondent Wiedemann Industries, Inc.

Zuger, Bucklin, Kelsch & Zuger, Bismarck, for defendant and respondent Honeywell, Inc.

Conmy, Conmy, Rosenberg & Lucas, Bismarck, for defendants and appellants Froeschle Sons, Inc., and Hulm Electric, Inc.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendant and respondent Froeschle Sons, Inc.

STRUTZ, Chief Justice, on reassignment.

This action was brought by the plaintiff to recover damages to its new church caused by a fire which damaged the baptistry and an area surrounding it. Whenever the word "plaintiff" is used in this opinion, it refers to the plaintiff church, and not to the insurance company which later was joined as a plaintiff by motion.

At the time of the fire, which occurred in the early morning of January 17, 1967, the building had not been officially delivered to or accepted by the plaintiff. A small amount of work remained to be done, including some minor finishing on kitchen cabinets and laying of carpeting on the stairs leading to the balcony. The building itself had been occupied and used for all church services since the middle of the previous October. Dedication services had been held November 4 to 6, 1966, more than two months before the fire. Construction of the church, to all intents and purposes, had been completed and the building had been in constant use for three months prior to the fire.

The record discloses that the baptistry, which the building committee of the plaintiff had selected, was one manufactured and sold by the defendant Wiedemann Industries, Inc. Because of its size, this unit of equipment had been delivered to the building site during the summer of 1966. It is not disputed that the unit was in an unprotected location where anyone could have had access to it during the period of construction. After its delivery, it was placed in the building by constructing the edifice around it. In other words, the baptistry was wholly unprotected during the early stages of the building process, until the church had reached a stage in construction where it was inclosed and could be locked, but up to that time it was accessible to anyone who, rightfully or wrongfully, was upon the building site. This baptistry unit had been accepted as complete by the architect prior to the fire, although the building itself had not been fully approved in writing by either the plaintiff or the architect, as required by the building contract.

After the plaintiff took over the church in October of 1966 for the purpose of conducting its services, all of its functions were conducted in the new building. All that remained to be done insofar as the baptistry was concerned was that it had to be filled with water.

In December of 1966, the members of the plaintiff's official board desired to test the operation of the baptistry, and put water into it. There is some question as to whether a sufficient amount of water was run into the unit at that time to activate the heating element. The evidence shows only that the heating unit failed to function and that the water failed to get warm. There is no evidence that there was any leak in the reservoir of the baptistry itself.

When the water failed to warm, the contractor was called and the electrician and the architect also were contacted. Investigation disclosed that the electic power was not going beyond the diaphragm. In order to determine how best to remedy the situation, the defendant Wiedemann Industries was called long distance. Wiedemann Industries thereupon sent a replacement switch from its factory. On receipt of this replacement, the water was drained from

the baptistry and the switch was installed by the defendant Hulm Electric, Inc. Then water again was run into the tank. The record discloses that this time sufficient water was run into the baptistry to activate the controls. In any event, the pilot light then came on, indicating that all of the elements were functioning. All this took place at about ten o'clock on the morning of January 16. The water was checked from time to time during that day by the electrician who had installed the replacement switch, and by the time he left the church, at approximately three o'clock in the afternoon, there had been no noticeable change in the temperature of the water. The water still was in the baptistry at the time he departed.

On the evening of January 16, 1967, the young people of the church had a meeting in the new building, but none of them were called as witnesses. Whether any of them had been at the baptistry or in the area where the fire occurred can only be a matter of speculation.

The caretaker who had charge of the building was not called as a witness, but the parties stipulated that if he were to be called he would testify that he had left the church at about ten o'clock in the evening before the fire, and at that time everything appeared to be in proper order; that as he left the church he did not smell smoke, he heard no unusual noise in the area of the baptistry, and he saw no water on the floor or in the hall.

At about three o'clock in the morning, a police officer checking the area smelled smoke and then saw smoke coming from the building. He then turned in an alarm. This same officer had checked the building earlier that night and had found nothing wrong.

When the firemen arrived, they forced their way into the building and found water on the floor of the hall as they entered. The fire was located and was extinguished by the use of water hoses. Investigation revealed that a copper pipe had broken or

had become disconnected at a joint, and it was believed that the water found on the floor of the hall had come from this break in the pipe. The record is silent as to whether there was any water in the baptistry at the time the firemen arrived, or whether the drain in the baptistry was open. No combustible materials were found at the point where the fire was located which might have caused spontaneous combustion.

The State fire marshal, Vance Arneson, and the fire chief of the City of Bismarck, Alvin Ode, each testified that in his opinion the fire had started because of a malfunction of the electric control on the heating unit in the baptistry, which was the low point of the fire. Arneson testified that although the low point of the fire would not absolutely determine the point of origin of the fire, it was his professional opinion that the low point in this instance, being where the electric control of the heating unit was located, was the point of origin of the fire, and that from that point the fire had traveled southeastward and upward.

After the fire, the switches or controls, with the exception of the thermostat, were found to be in working order and still functioning. By a stipulation of the parties, the functioning of these units was demonstrated in court.

After the court had completed the taking of testimony on September 17, 1969, it adjourned. Thereafter, at 10:18 a. m. on November 12, 1969, the court reconvened and announced that it was ready to render its decision in the case.

On the evidence which had been produced at the trial, the court found that the plaintiff had failed to sustain its burden of proof to establish the cause of fire and had failed to prove by a preponderance of the evidence that the defendants, or any of them, were liable for the damage to the plaintiff's church. The court pointed out that all that the plaintiff actually had proved was that a fire had occurred and

that its property had been damaged. The court asserted that if it were to find for the plaintiff on the record made by the plaintiff, it would be compelled to guess at what actually had happened because nothing in the record showed that the contractor had been negligent or that any of the other defendants had done anything or failed to do anything which would make them liable for the fire. Other than showing that a fire actually had occurred, the plaintiff had not proved its case or established its claim against any of the defendants. In the opinion of the trial court, the fire marshal and the fire chief were merely speculating on what might have caused the fire, and that such speculation was not a proper basis for a judgment against any of the defendants. The court thereupon ordered the complaint of the plaintiff to be dismissed as to all of the defendants.

On December 2, 1969, the court again convened for the purpose of considering a plaintiff's motion for permission to file an amended complaint under Rule 15(b), North Dakota Rules of Civil Procedure, and to allege in such amendment an issue of breach of contract against the defendant Froeschle Sons, Inc., as general contractor and against the defendant Hulm Electric, Inc., as electrical contractor. The plaintiff urged that although its original complaint had raised only issues of tort and products liability, the contracts entered into between it and the defendant contractors had been introduced into evidence; that these contracts provided that final approval of the building was to be given in writing by the plaintiff and the architect; that since no such acceptance had been made, it was a breach of contract on the part of the defendant contractors not to have delivered the building to the plaintiff in perfect condition; and that since the contracts had been introduced into evidence, the issue of breach of contract was, in fact, before the trial court and the amendment should be permitted under Rule 15(b) as an amendment to conform to the proof in the case.

The court denied the plaintiff's motion to amend under Rule 15(b), pointing out that the entire case had been tried on the issues of negligence and products liability, and that none of the parties at any time had considered the issue of breach of contract as being in the case; that should the court permit the amendment under Rule 15(b) at that time, an entirely new issue would be injected into the case which would require additional evidence; that amendment under Rule 15(b) should be allowed only to make the pleadings conform to the proof which actually had been submitted in the trial; and that the evidence which had been submitted in the case was, in fact, insufficient to justify a judgment against the defendants named for breach of contract, should the court permit the amendment.

From the judgment entered dismissing the plaintiff's complaint and the order denying the plaintiff's motion to amend its complaint under Rule 15(b), the plaintiff has appealed to this court, demanding a trial de novo.

■ Section 28–27–32, North Dakota Century Code, which was the statute providing for a trial de novo in this court on appeal in actions tried to the court without a jury, was repealed by the 1971 session of the Legislative Assembly. See Chapter 311, Sec. 2, Session Laws of 1971. The effective date of such repeal was July 1, 1971. Sec. 67, North Dakota Constitution. We have heretofore held that where an appellant serves and files his notice of appeal and undertaking on appeal prior to the effective date of the repeal statute, the demand for trial de novo is timely made. Automobile Club Insurance Co. v. Hoffert, 195 N.W.2d 542 (N.D.1972). The record in this case discloses that the notice of appeal, demand for trial de novo, and waiver of undertaking on appeal were served and filed prior to July 1, 1971. The demand for trial de novo therefore was timely made, and the appeal will be considered de novo in this court.

We now will proceed to a consideration of the issue of whether the evidence submitted by the plaintiff in this case was sufficient to establish the liability of the defendants, or any of them. This court on numerous occasions has held that in reviewing the entire record on trial de novo it will give appreciable weight to the findings of the trial court, especially where the court has had an opportunity to observe some of the witnesses, hear them testify, and consider their actions and demeanor on the witness stand. Steuber v. Hastings Heating & Sheet Metal Co., 153 N.W.2d 804 (N.D.1967); Parceluk v. Knudtson, 139 N.W.2d 864 (N.D.1966); Hillius v. Wagner, 152 N.W.2d 468 (N.D.1967).

■ Although the trial court's findings on an appeal de novo are entitled to appreciable weight, this court is not bound thereby. Adams v. Little Missouri Minerals Assn., 143 N.W.2d 659 (N.D.1966); Spielman v. Weber, 118 N.W.2d 727 (N.D.1963). It therefore becomes our duty in this case to carefully review all of the evidence, giving appreciable weight to the findings of the trial court.

This case was commenced as a negligence and products-liability action. To prove its case, the plaintiff has urged that the doctrine of res ipsa loquitur be applied; that such doctrine raises the rebuttable presumption that the defendants were negligent; and that this doctrine, together with other evidence in the case, is sufficient to prove the plaintiff's case. We first will determine whether the doctrine of res ipsa loquitur can properly be applied to aid the plaintiff in proving the issue of negligence.

■ The res ipsa loquitur doctrine raises a rebuttable presumption, but we do not believe it is available to the plaintiff in this action. Such doctrine is available to a plaintiff only where the evidence shows that the instrumentality which is alleged to have caused the plaintiff's injury was in the exclusive control of the defendant and that the accident was one which ordinarily does not occur in the absence of negligence. United States Rubber Co. v. Bauer, 319 F.2d 463 (8th Cir. 1963).

■■ A defendant's negligence never is presumed merely from proof of the happening of an accident, but such negligence must be affirmatively established. Haga v. Cook, 145 N.W.2d 888 (N.D.1966); Foerster v. Fischbach-Moore, Inc., 178 N.W.2d 258 (N.D.1970). The application of res ipsa loquitur does not shift the burden of proof from the plaintiff to the defendant. It is merely a presumption which is rebuttable, to assist the plaintiff in establishing negligence on the part of the defendant.

■ Since the defendants were not in exclusive control of the instrumentality in this case, the doctrine of res ipsa loquitur does not apply.

■ We have held that in a negligence action the plaintiff has the burden of proving by a preponderance of the evidence that the defendant was responsible for some negligent act or omission, and that such act or omission was the proximate cause of the plaintiff's injuries and damages. Farmers Home Mutual Insurance Co. v. Grand Forks Implement Co., 79 N.D. 177, 55 N.W.2d 315 (N.D.1952); Koistinen v. Farmers Union Oil Company of Rolla, 179 N.W.2d 327 (N.D.1970).

■ The plaintiff has the same burden where its claim is based upon products liability, since it is a fundamental principle of law that one asserting a claim generally has the burden of establishing such claim by a preponderance of the evidence.

■ Proximate cause may be proved by circumstances, if circumstances will permit a reasonable inference of a cause of injury for which the defendant is responsible, and at the same time exclude equally reasonable inferences of other causes for which the defendant is not responsible. Farmers Home Mutual Insurance Co. v. Grand Forks Implement Co., *supra.*

■ In other words, if from the plaintiff's evidence it is as probable that the injury and damage of which the plaintiff complains resulted from a cause for which the defendant is not responsible as it is that such injury and damage resulted from a cause for which the defendant would be responsible, a prima-facie case of proximate cause has not been made and the plaintiff cannot recover, since plaintiff's recovery must be based upon more than mere speculation.

■ We have carefully scrutinized the evidence and have read the record upon which the trial court found that the plaintiff had not sustained its burden of proof in this action. The fire marshal and the Bismarck fire chief each testified that in his opinion the fire started in the electric switch, which was badly burned. They testified, in effect, that they believed that the fire started from malfunctioning of the heating elements or heating controls. That is all. The plaintiff did not prove any defect in the unit or that a defect was the cause of the fire.

■ After the plaintiff had produced such testimony, we believe that it had created a situation where it then became the responsibility of the defendants to go forward with the evidence. The burden of proof, however, did not shift to the defendants; only the burden of going forward with the evidence. 65A C.J.S. Negligence § 208b, p. 471.

After the introduction of the testimony of the fire marshal and the fire chief by the plaintiff, the defendants did go forward with the evidence. A review of the record discloses that the defendants introduced evidence to show that the switch which the plaintiff claimed was the cause of the fire still was functioning properly after the fire. From this, the trial court concluded that the defendants had sustained their burden of going forward with the evidence. We find that the trial court's reasoning was justified by the record. If the switch was functioning properly after going through a serious fire, it cannot be presumed that it was not functioning before the fire because it would be unreasonable to assume that severe damage by the fire would have cured a defect which might have existed prior thereto and which might have caused the fire.

We might speculate on what might have started the blaze, and we could come up with a number of theories. For example, there was a young peoples' meeting in the church on the night of the fire. There are many things which we might imagine could have happened. None of the young people were called as witnesses. Suffice it to say that under the circumstances it is as probable that the fire and the damage which it caused might have resulted from some cause other than a defective switch, as it is probable that the fire was due to some malfunction of the switch. Under the evidence, it would be necessary to speculate on the cause of the fire if we were to hold for the plaintiff. Since that is true, the plaintiff has not sustained its burden of proof.

The plaintiff next asserts that the trial court erred in denying its motion for permission to amend its complaint under Rule 15(b), raising the issue of breach of contract against the defendant Froeschle Sons, general contractor, and against the defendant Hulm Electric, which had installed the electric switches. Rule 15(b), North Dakota Rules of Civil Procedure, provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to . amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the plead-

ings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

Were issues tried in this case, by the express or implied consent of the parties, which had not been raised by the pleadings? In other words, did the plaintiff introduce evidence on the issue of breach of contract on the part of the defendants Froeschle and Hulm, with the express or implied consent of the defendants, as well as submit evidence in support of the theory of negligence and on the issue of products liability, which issues the plaintiff raised in its complaint?

No evidence on the issue of breach of contract was introduced at the trial. The evidence discloses that the church was used for all of the plaintiff's functions for a period of three months prior to the fire. It had been dedicated more than two months before that event. Although such use and dedication would not excuse the contractor for defects in construction, neither would the fact that the building had not been formally accepted in writing by the plaintiff, as required by the provisions of the contract, make the builder an insurer and responsible for anything that might occur prior to such acceptance. There remained only a few minor details to be taken care of by the contractor, such as installing carpeting on the stairs and some work on the kitchen cabinets. These items were not shown to have been in any way connected with the cause of the fire.

It is our view that the evidence submitted by the plaintiff was insufficient to justify a finding of breach of contract. Accordingly, it was proper for the trial court to deny the plaintiff's post-trial motions to amend the complaint under Rule 15(b) in order to allege an issue of breach of contract and to reopen the trial for additional evidence on breach of contract.

For reasons set forth in this opinion, the judgment of the trial court dismissing the plaintiff's complaint with prejudice and dismissing all cross-claims of the defendants, and the order denying the plaintiff's motions to amend its complaint under Rule 15(b) and to reopen the trial, are affirmed.

TEIGEN, ERICKSTAD, PAULSON and KNUDSON, JJ., concur.