**VICTORY PARK APARTMENTS, INC.,**
**Plaintiff and Appellee,**

v.

**Doris AXELSON, Defendant**
**and Appellant.**

**Civ. No. 10731.**

Supreme Court of North Dakota.

April 24, 1985.

case law interpreting the federal counterpart. *Gruebele v. Gruebele,* 338 N.W.2d 805 (N.D. 1983).

**158**

Maureen Holman, of Tenneson, Serkland, Lundberg, Erickson & Marcil, Fargo, for plaintiff and appellee.

Jon R. Brakke, of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendant and appellant.

VANDE WALLE, Justice.

Doris Axelson appeals from a district court judgment holding her liable to Victory Park Apartments, Inc. (Victory Park), for damages caused by a fire, and from an order denying her motion for judgment notwithstanding the verdict. We reverse and remand for a new trial.

On February 24, 1980, a fire occurred in an apartment building owned by Victory Park. The damage was confined primarily to the apartment rented to Doris Axelson. On the evening prior to the fire, Doris worked until 1 a.m. at the lounge which she owns in Valley City. She returned to her apartment with Melvin Thompson, an employee at the lounge. Melvin slept on the couch in the living room of the apartment and rose early the next morning, a Sunday, to clean the lounge. Sometime after Melvin left, Doris and her daughter, Debra Axelson, drank coffee and smoked cigarettes at the kitchen table in the apartment. Melvin testified that when he returned to the apartment later in the morning Doris was sitting on the couch, but she was not smoking. Doris, Debra, and Melvin then left the apartment and returned to the lounge to resume cleaning. Several hours later, at approximately 4 p.m., the fire was discovered in Doris's apartment.

Victory Park commenced this action against Doris for damages to its building. At trial, the Valley City fire chief, George Schlittenhardt, testified that in his opinion the fire started in the living room sofa and was caused by a cigarette. The trial court instructed the jury on negligence, res ipsa loquitur, and a tenant's standard of care for the conduct of others. The jury returned its verdict finding Doris negligent and awarding Victory Park $9,414 in damages. The court entered judgment on the verdict, and Doris moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion was denied. Doris now appeals to this court from the judgment and from the order denying her post-trial motion.[1]

Doris raises numerous issues alleging error by the court in admission of evidence and in the instructions given to the jury. We conclude that the court committed reversible error when it instructed the jury on res ipsa loquitur under the facts of this case. Having determined that remand for a new trial is necessary, we will also consider additional issues which may arise again on retrial.

## I. RES IPSA LOQUITUR

Negligence must be affirmatively proved, and will not be presumed merely from the occurrence of the accident or damages. *Northwestern Equipment, Inc. v. Cudmore,* 312 N.W.2d 347 (N.D.1981); W. Prosser & W. Keeton, *Law of Torts* 242 (5th ed. 1984). It is not necessary, how-

---

1. Doris has also filed a motion for temporary remand to the trial court to allow the court an opportunity to rule on her objections to Victory Park's statement of costs and disbursements. When Doris filed her notice of appeal on June 15, 1984, she had previously filed her objections to taxation of costs and that matter was pending before the trial court. When the notice of appeal was filed, however, it divested the district court of jurisdiction to rule on the objections to costs. *Buzzell v. Libi,* 340 N.W.2d 36 (N.D.1983).

Because we are reversing on the merits and remanding for new trial, a temporary remand to the trial court for its decision on Doris's objections to costs is unnecessary.

ever, that there always be an eyewitness to the defendant's conduct. Negligence may be proved by circumstantial evidence. *Foerster v. Fischbach-Moore, Inc.,* 178 N.W.2d 258 (N.D.1970). The res ipsa loquitur doctrine encompasses one form of circumstantial evidence.[2] *Cyr v. Green Mountain Power Corp.,* Vt., 485 A.2d 1265 (1984); see W. Prosser & W. Keeton, *Law of Torts, supra,* at 243.

As applied in this State, res ipsa loquitur allows the fact-finder to draw an inference that the defendant's conduct was negligent if the following foundational facts are proved: (1) the accident was one which does not ordinarily occur in the absence of negligence; (2) the instrumentality which caused the plaintiff's injury was in the exclusive control of the defendant; and (3) there was no voluntary action or contribution on the part of the plaintiff.[3] *Foerster v. Fischbach-Moore, Inc., supra.* In order to have the court instruct on res ipsa loquitur, the plaintiff must present probative evidence from which the jury could find each of the required foundational facts.

Doris asserts that res ipsa loquitur can never be applied in a case involving fire, because fires often occur without negligence. On at least three occasions, this court has addressed the application of res ipsa loquitur in fire cases. See *Bismarck Baptist Church v. Wiedemann Industries, Inc.,* 201 N.W.2d 434 (N.D.1972); *Foerster*

*v. Fischbach-Moore, Inc., supra; Farmers Home Mutual Insurance Co. v. Grand Forks Implement Co.,* 79 N.D. 177, 55 N.W.2d 315 (1952). Although in each of those cases we rejected application of the doctrine, we did so on the particular facts presented, not on the basis that res ipsa loquitur is never applicable in a fire case. It is not the mere occurrence of a fire but the circumstances under which the fire originated and spread which may give rise to application of res ipsa loquitur. *Foerster v. Fischbach-Moore, Inc., supra.* If the circumstances of a particular case evidence the requisite foundational facts, res ipsa loquitur may apply.

Having concluded that res ipsa loquitur may be applied in a fire case under appropriate circumstances, we further conclude that this is not such a case. After a careful review of the record, we conclude that there was insufficient evidence presented from which the jury could find that Doris had "exclusive control" of the instrumentality which caused the injury in this case.

Victory Park asserts that the "instrumentality" which caused the injury in this case was either the couch or the apartment, which were in the exclusive control of Doris as the tenant of the apartment. We disagree. Victory Park relies on *Olswanger v. Funk,* 63 Tenn.App. 201, 470 S.W.2d 13 (1970), in which the Court of Appeals of Tennessee indicated that the defendant's

---

2. Although labeled a doctrine, res ipsa loquitur is not a rule of substantive law but is a principle of evidence. E.g., *Northwestern National Insurance Co. v. Raid Quarries Corp.,* 249 N.W.2d 640 (Iowa 1977); *Arterburn v. St. Joseph Hospital & Rehabilitation Center,* 220 Kan. 57, 551 P.2d 886 (1976); *Richards v. Daniels,* 430 So.2d 779 (La. Ct.App.1983); *Corbett v. Curtis,* 225 A.2d 402 (Me.1967); *Swan v. Tygett,* 669 S.W.2d 590 (Mo. Ct.App.1984); see also Prosser, *The Procedural Effect of Res Ipsa Loquitur,* 20 Minn.L.Rev. 241, 257–258 (1936).

3. No issue has been raised as to the effect of the Legislature's adoption of comparative negligence on the third element of res ipsa loquitur. Numerous courts which have been faced with this issue have held that the adoption of comparative negligence in their respective States has abrogated the requirement that plaintiff estab-

lish lack of wrongful conduct on his own part before res ipsa loquitur may be applied. See, e.g., *Montgomery Elevator Co. v. Gordon,* 619 P.2d 66 (Colo.1980); *Mileur v. Briggerman,* 110 Ill.App.3d 721, 66 Ill.Dec. 443, 442 N.E.2d 1356 (1982); *Cramer v. Mengerhausen,* 275 Or. 223, 550 P.2d 740 (1976); *Cyr v. Green Mountain Power Corp.,* Vt., 485 A.2d 1265 (1984); *Turtenwald v. Aetna Casualty & Surety Co.,* 55 Wis.2d 659, 201 N.W.2d 1 (1972); *Turk v. H.C. Prange Co.,* 18 Wis.2d 547, 119 N.W.2d 365 (1963); see also W. Prosser & W. Keeton, *Law of Torts* 254 (5th ed. 1984). For an interesting dialogue on the Colorado Supreme Court's resolution of the issue, see 53 Colo.L.Rev. 777 (1982) and 52 Colo.L.Rev. 565 (1981).

In this case, there has been no claim that Victory Park acted negligently. We therefore find it unnecessary to resolve this issue today.

exclusive control of the couch in which the fire started was sufficient to satisfy the "exclusive control" element of res ipsa loquitur. We question the logic of a rule which would permit an inference of negligence to arise merely from the defendant's control over the object in which the fire originated or the area where it originated. The far better rule, which we have already embraced in *Foerster v. Fischbach-Moore, Inc., supra,* 178 N.W.2d at 263, is that "the 'thing' or 'instrumentality' which *caused* the fire ... is required to be under the control of the defendant." [Emphasis added.]

■ Victory Park's theory of the fire is that a negligently smoked cigarette was dropped between the cushions of the couch, where it smoldered for a period of time and eventually ignited the couch. It is clear that the "thing" or "instrumentality" which caused the fire under those circumstances was the cigarette, not the couch or the apartment. See *Smith v. Little,* 626 S.W.2d 906 (Tex.Ct.App.1981) [flammable liquid which spilled on carpet, not carpet, was instrumentality that caused fire]; *Oliver v. Hutson,* 596 S.W.2d 628 (Tex.Civ. App.1980) [cigarette dropped into chair, not residence, was instrumentality which caused fire]. Thus, in order for the instruction on res ipsa loquitur to be given, it was incumbent upon Victory Park to present evidence from which the jury could determine that Doris had exclusive control over the cigarette which ignited the fire. At best, Victory Park's evidence created an inference that one of the three persons present in the apartment that morning had control over the offending cigarette; beyond that, the jury was left to speculate as to which of the three was the offending party.

Professor Prosser has succinctly stated the requirement that the evidence must link the defendant with the offending instrumentality:

"It is never enough for the plaintiff to prove merely that the plaintiff has been injured by the negligence of someone unidentified. Even though there is be-yond all possible doubt negligence in the air, it is still necessary to bring it home to the defendant. 'The purpose of this requirement is to link the defendant with the probability, already established, that the accident was negligently caused.' On this too the plaintiff has the burden of proof by a preponderance of the evidence; and in any case where it is clear that it is at least equally probable that the negligence was that of another, the court must direct the jury that the plaintiff has not established a case." W. Prosser & W. Keeton, *Law of Torts, supra,* at 248. [Footnotes omitted.]

See also *Marathon Oil Co. v. Sterner,* 632 S.W.2d 571 (Tex.1982); *Neis v. National Super Markets, Inc.,* 631 S.W.2d 690 (Mo. Ct.App.1982); *Samson v. Riesing,* 62 Wis.2d 698, 215 N.W.2d 662 (1974).

After reviewing the record in this case for the purpose of determining the correctness of the instruction on res ipsa loquitur, we are satisfied that it was equally as probable that Melvin or Debra, rather than Doris, was responsible for the negligently smoked cigarette. The record discloses that all three were smokers; that Doris and Debra each smoked a cigarette at the kitchen table that morning; that Melvin slept on the couch that night; and that, when Melvin returned from cleaning the lounge, Doris was on the couch but was not smoking. This is all of the evidence which was presented to establish that Doris negligently smoked a cigarette on the couch. The jury was left to speculate as to which of the three smoked the cigarette in question. Although, in Prosser's words, there is "negligence in the air," Victory Park has failed to bring the negligence "home" to Doris.

Other courts faced with similar fact situations have reached like conclusion. See *Oliver v. Hutson, supra; Fireman's Fund American Insurance Companies v. Knobbe,* 93 Nev. 201, 562 P.2d 825 (1977).

We hold that Victory Park failed to present probative evidence which would allow the jury to determine that Doris had exclusive control of the cigarette in ques-

tion. The jury was left to speculate as to which of three persons had been in control of the offending instrumentality. Under these circumstances, it was error to instruct the jury on res ipsa loquitur,[4] and we reverse the judgment and remand for a new trial.

Having determined that this case must be reversed and remanded for a new trial, we will consider those issues raised by the parties which are likely to arise again on retrial.

## II. EVIDENTIARY ISSUES

### A. *Admission of Police Report*

Doris asserts that the trial court erred in admitting into evidence a police report prepared by Detective Bernard Kracht of the Valley City Police Department. This report summarized Kracht's interrogation of Melvin Thompson on the morning after the fire.

Victory Park contends that the report was admissible under Rule 803(8)(iii), N.D. R.Ev., which provides, in pertinent part, that public records "setting forth ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness," are not excluded by the hearsay rule. Because this portion of Rule 803(8) is a verbatim adoption of Rule 803(8)(C) of the Federal Rules of Evidence, we look to the legislative history of the Federal rule and interpretive Federal case law for guidance in interpreting our own rule. *State v. Manke,* 328 N.W.2d 799 (N.D.1982).

On its face, Rule 803(8)(iii) allows admission of reports which set forth "factual findings resulting from an investigation made pursuant to authority granted by law." There has been much debate regarding whether opinions and evaluative conclusions are encompassed within the phrase

---

4. Doris also has alleged that the form of the res ipsa loquitur instruction was erroneous. Although disposition of this issue is unnecessary in light of our holding that *no* res ipsa loquitur instruction should have been given, we will briefly comment on the form of the instruction given by the trial court.

The trial court instructed the jury that negligence could be "presumed" if the three foundational facts were found. Perhaps this is a result of a reference in *Bismarck Baptist Church v. Wiedemann Industries, Inc.,* 201 N.W.2d 434 (N.D.1972), where this court referred to res ipsa loquitur raising a rebuttable presumption. Under Rule 301(a), N.D.R.Ev., a presumption shifts the burden of proof to the party against whom it is directed.

Res ipsa loquitur does not shift the burden of proof. *Wasem v. Laskowski,* 274 N.W.2d 219 (N.D.1979); *Bergley v. Mann's,* 99 N.W.2d 849 (N.D.1959). Rather, application of the doctrine merely raises a permissible inference of negligence which the jury is free to accept or reject. *Wasem v. Laskowski, supra; Bergley v. Mann's, supra.*

The last sentence of the trial court's instruction on res ipsa loquitur states: "It is not necessary that all possible causes of an accident must be eliminated in order for this rule to apply." Although this statement is often included in appellate court opinions, we do not believe that the jury should have been instructed that it was unnecessary to eliminate other possible causes. The principle stated merely aids the court in determining whether to give the instruction. It

is a directive to trial courts that the jury may be instructed on res ipsa loquitur even if other possible causes of the injury are not absolutely eliminated by the evidence. If the evidence is such that the jury must decide which of two or more possible causes was the proximate cause of the plaintiff's injury, the jury may be instructed that res ipsa loquitur may apply if the jury finds the cause of the injury to be one for which the defendant was responsible. By including it as part of a res ipsa loquitur instruction, however, the jury could be misled into finding proximate cause by applying res ipsa loquitur. Res ipsa loquitur has no application to proximate cause and does not dispense with the requirement that the act or omission on which the defendant's liability is predicated be established as the proximate cause of the plaintiff's injury. Only after proximate cause has been established is res ipsa loquitur available to raise an inference of negligence. *Farmers Home Mutual Insurance Co. v. Grand Forks Implement Co.,* 79 N.D. 177, 55 N.W.2d 315 (1952).

The instruction as given may also have confused the jury on the issue of exclusive control. Because the jury was instructed that res ipsa loquitur may apply even though other possible causes of the injury had not been eliminated, the jury may have erroneously believed it could hold Doris liable under res ipsa loquitur even though it was equally as likely that the fire had resulted from some other cause.

"factual findings." See, e.g., 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(8)[03] (1984); Grant, *The Trustworthiness Standard for the Public Records and Reports Hearsay Exception,* 12 W.St. U.L.Rev. 53, 81–85 (1984). Many of the cases discussing this issue have been compiled in D. Binder, *Hearsay Handbook* 187–194 (2d ed. 1983).

■ The police report in this case, however, is merely a summary of Detective Kracht's interrogation of Melvin Thompson. Nearly every sentence in the report begins with "I asked him ..." or "He said...." It is apparent that the report does not contain fact-based findings, evaluative conclusions, or opinions of the police officer.

Victory Park relies on our decision in *State v. Manke, supra,* to support its contention that the report is admissible under Rule 803(8)(iii). In *Manke,* we noted four factors which will be considered in determining whether a report lacks trustworthiness or is unreliable. However, those four factors are only to be applied to assess trustworthiness *after* it is determined that the report falls within Rule 803(8)(iii). If the report qualifies under the rule it is not automatically admissible; the opposing party can challenge its trustworthiness and reliability, and the four factors adopted in *Manke* are then applied. Victory Park's reliance on the four *Manke* factors is misplaced, in light of the fact that the report in this case does not meet the initial criteria of Rule 803(8)(iii).[5]

Victory Park also relies upon *Baker v. Elcona Homes Corp.,* 588 F.2d 551 (6th Cir.1978), *cert. denied,* 441 U.S. 933, 99 S.Ct. 2054, 60 L.Ed.2d 661 (1979), in which the court held that a police report, including the patrolman's conclusion that plaintiff's car had gone through a red light, was admissible under Rule 803(8)(C), F.R.Ev. The distinction between *Baker* and the in-

stant case is obvious. In *Baker,* the patrolman recorded his observations of the scene of the accident, a statement by the driver of one of the vehicles involved, and the patrolman's conclusion that plaintiff's car had gone through a red light. Thus the report contained fact-based findings (the measurements, vehicle locations, and physical markings) as well as the officer's evaluative conclusion that one car had proceeded through a red light. The report in this case, however, contains no such findings or conclusions of the investigating officer; it is a summary of Melvin Thompson's interrogation. Kracht did not record any findings or conclusions drawn from his investigation or interrogation of Thompson. Even under the liberal interpretation of "factual findings" embodied in *Baker,* the report in this case simply does not fall within the Rule 803(8)(iii) exclusion. We conclude that the police report was not admissible under Rule 803(8)(iii).

### B. *Kracht's Testimony of Statements Made by Melvin Thompson*

Detective Kracht was allowed to testify, over objection, about statements made by Melvin Thompson on the day after the fire. In addition to testifying regarding Thompson's statements included in the police report, Kracht also testified that Thompson had stated that Doris frequently smoked on the couch if she had slept there.

■ The hearsay character of this testimony is obvious. Victory Park does not attempt to show that these statements fell within an exception to the hearsay rule, but rather argues that any error in admitting them was harmless. Because we are remanding for a new trial, we need not determine whether or not the error was harmless. It was error to permit Kracht to testify regarding the statements made by Thompson.

---

**5.** In *Manke,* there was no issue raised regarding the applicability of Rule 803(8)(iii). The report in that case contained the results of a "rape kit" analysis by a chemist with the State Laboratories Department. The report clearly contained "factual findings resulting from an investigation," and therefore satisfied the Rule 803(8)(iii) requirement which has not been met in this case.

## C. *Exclusion of the Blanket*

Doris asserts that the trial court erred in refusing to admit into evidence a blanket which she claims was on the back of the couch on the day of the fire. Doris alleged that the condition of the blanket supports her contention that the fire did not start on the couch. The trial court refused to admit the blanket, apparently because it had been washed after the fire and therefore was not in the same condition as it was immediately after the fire.

■ It is a prerequisite for admission of demonstrative evidence that the article or object be in substantially the same condition as it was at the time in issue. *Gleson v. Thompson*, 154 N.W.2d 780 (N.D. 1967). The admission or exclusion of demonstrative evidence is within the sound discretion of the trial court, and will not be disturbed on appeal absent an abuse of that discretion. *State v. Berger*, 285 N.W.2d 533 (N.D.1979); *State v. Lange*, 255 N.W.2d 59 (N.D.1977); *Gleson v. Thompson, supra*. We conclude that the trial court did not abuse its discretion in refusing to admit the blanket into evidence.

## D. *Expert Testimony on Cause of the Fire*

The trial court allowed Chief Schlittenhardt to testify, over objection, that in his opinion the fire started in the couch and was caused by a cigarette. From the record it appears that Schlittenhardt based his conclusion that a cigarette had caused the fire upon the presence of an ashtray on a table near the couch and upon the fact that the tenant of the apartment was a smoker. The parties point to other factors which Schlittenhardt may have considered, including Melvin Thompson's statements that Doris was lying on the couch when he returned from the lounge that morning and that she occasionally smoked on the couch if she slept there. Doris contends that there were no facts presented which required expert interpretation and analysis, and that there was an inadequate foundational basis for Schlittenhardt's opinion.

■ We have in the past stated that an expert will not be permitted to express an opinion if the facts and circumstances disclosed by the evidence are such that it may be assumed that the jury is capable of understanding them and arriving at its own conclusion. *Fisher v. Suko*, 98 N.W.2d 895 (N.D.1959). *Fisher* was decided before the adoption of our Rules of Evidence in 1977. Admission of expert testimony is now governed by Rule 702, N.D.R.Ev.:

> "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

■ The determination to admit expert testimony under Rule 702 rests within the sound discretion of the trial court, and its determination will not be disturbed on appeal unless the court has abused its discretion. *Patch v. Sebelius*, 349 N.W.2d 637 (N.D.1984); *South v. National Railroad Passenger Corp.*, 290 N.W.2d 819 (N.D. 1980). Thus it was for the trial court to determine whether Schlittenhardt's interpretation and analysis of the facts and circumstances would assist the trier of fact. The trial court determined that his testimony would aid the trier of fact, and upon a review of the record we conclude that the court did not abuse its discretion.

■ Doris also contends that there was an inadequate basis for Schlittenhardt's opinion. We have held, however, that the weakness or non-existence of a basis for an expert's opinion goes to his credibility, and not necessarily to the admissibility of the opinion evidence. *Dodds v. North Dakota State Highway Commissioner*, 354 N.W.2d 165 (N.D.1984); *Feuerherm v. Ertelt*, 286 N.W.2d 509 (N.D.1979). Credibility is a matter for the trier of fact [*Dodds v. North Dakota State Highway Commissioner, supra* ] and the jury was entitled to give Schlittenhardt's opinion testimony as much or as little weight as the jury felt it deserved. We conclude that it was not

error to admit Schlittenhardt's opinion testimony on the cause of the fire.[6]

## III. JURY INSTRUCTIONS

### A. *Proximate Cause*

The trial court, as part of its instruction on proximate cause, instructed the jury as follows:

"As to the proximate cause of the fire, it is not required that the evidence exclude all possibility of another origin or that it be undisputed; it is sufficient if all the facts and circumstance [sic] in evidence fairly warrant the conclusion that the fire did not originate from some other cause. Thus, the origin of a fire has generally been held sufficiently established by inferences drawn from circumstantial evidence. Proof of causation may be sufficiently proven by a process of elimination of other causes."

Doris contends that this instruction erroneously allowed the jury to employ a process of elimination to arrive at the proximate cause of the fire.

■■■ We have previously held that "proximate cause may be proved by the circumstances of a case if such circumstances permit a reasonable inference of a cause of injury for which the defendant is responsible, and at the same time exclude equally reasonable inferences of other causes for which the defendant is not responsible." *Leno v. Ehli,* 339 N.W.2d 92, 96 (N.D.1983); see also *Bismarck Baptist Church v. Wiedemann Industries, Inc.,* 201 N.W.2d 434 (N.D.1972); *Farmers Home Mutual Insurance Co. v. Grand Forks Implement Co.,* 79 N.D. 177, 55 N.W.2d 315 (1952). This requires that some affirmative evidence be presented from which the jury may infer that the injury resulted from a cause for which the defendant was responsible, in addition to evidence which excludes other possible causes, to support a finding of proximate cause. Under the jury instruction given in this case, however, the jury would be free to find causation solely by eliminating other possible causes. In effect, the plaintiff would be alleviated of his burden of presenting evidence from which the jury could infer that it was the defendant's conduct which caused his injury.

■■■ The difficulty in allowing proof of causation solely by disproving other possible causes is that this presupposes that there is a finite number of possible causes for any given injury. It is apparent, however, that in most cases it will be impossible to disprove every other conceivable cause of an injury. Certainly the facts in this case give rise to a veritable plethora of possible scenarios leading up to the fire. The plaintiff may not choose a few possible causes, attempt to disprove them, and on that basis alone claim that one other possible cause has been established as *the* proximate cause. The plaintiff, having the burden of proof on this issue, must present some affirmative evidence that the defendant's conduct caused the injury to allow the jury to find that the defendant proximately caused the plaintiff's injury. The instruction in this case misstated the law and could have misled the jury on the issue of proximate cause, and we therefore conclude that the giving of the instruction was error.

### B. *Tenant Liability for Conduct of Others*

Section 47–16–13.2(6), N.D.C.C., provides that a tenant of a residential dwelling shall not "deliberately or negligently destroy, deface, damage, impair, or remove any part of the premises or knowingly permit any person to do so." The trial court instructed the jury as follows:

"TENANT'S LIABILITY FOR DAMAGE TO RENTAL PROPERTY

"A tenant of an apartment or residential dwelling in North Dakota is financially responsible if she has negli-

---

**6.** Upon remand the trial court will again have to determine, upon the facts and circumstances as presented upon retrial, whether to admit Schlit-tenhardt's opinion testimony. See *Patch v. Sebelius,* 349 N.W.2d 637 (N.D.1984).

gently damaged any portion of the premises. In addition, she is financially responsible if she knowingly permits another person to negligently damage the premises.

"A tenant owes a duty to his or her landlord not to deliberately or negligently destroy or damage any part of the leased premises or to knowingly permit any other individual to do so.

## "KNOWINGLY PERMIT

" 'Knowingly permit' does not require proof of actual knowledge and consent to that negligent action. A person knowingly permits something if, under the circumstances, she had adequate reasons and grounds to know of that action."

Doris contends that the court's instruction erroneously defined "knowingly permit" as requiring only that the tenant have "reason to know" of a third person's wrongful conduct, rather than actual knowledge of such conduct. We agree.

Every word used in a statute is to be given its plain, ordinary, and commonly understood meaning. Section 1–02–02, N.D.C.C.; *Rheaume v. State*, 339 N.W.2d 90 (N.D.1983); *Morton County v. Henke*, 308 N.W.2d 372 (N.D.1981). Webster's Third New International Dictionary defines "knowingly" in relevant part as "in a knowing manner ... with awareness." Giving the term "knowingly" its plain, ordinary meaning, we conclude that Section 47–16–13.2, N.D.C.C., imposes responsibility on tenants for conduct of third persons only where the tenant has actual knowledge or is aware of the wrongful conduct.

Doris also contends that the effect of the trial court's instruction is to ignore the word "permit." The statute imposes responsibility only if the tenant knowingly *permits* the third person's wrongful con-

duct. Webster's Third New International Dictionary defines "permit" in relevant part as follows: "1: to consent to expressly or formally ... ALLOW, TOLERATE ... 2: ... AUTHORIZE." Giving the term "permit" its plain, ordinary meaning, we conclude that Section 47–16–13.2, N.D. C.C., requires that the tenant, in addition to having knowledge or being aware of the wrongful conduct, must have consented to, allowed, authorized, or otherwise acquiesced in such conduct.[7]

We conclude that the trial court's instructions regarding a tenant's liability for the conduct of third parties was erroneous.

## IV. SPECIAL VERDICT

The trial court submitted the case to the jury on a special verdict. The special verdict included questions relating to Doris's negligence, but the trial court refused to include questions regarding the possible negligence of Melvin or Debra. Doris contends that, because evidence was presented which might support a finding of negligence on the part of Melvin or Debra, the court erred in refusing to submit their negligence to the jury in the special verdict.

Submission of special verdicts is governed by Rule 49(a), N.D.R.Civ.P.[8] The trial court has broad discretion over the nature and scope of written questions submitted to the jury, and appellate review is limited to determining whether there was an abuse of discretion. *Ardoin v. J. Ray McDermott & Co.*, 684 F.2d 335 (5th Cir. 1982); *Central Progressive Bank v. Fireman's Fund Insurance Co.*, 658 F.2d 377 (5th Cir.1981). The trial court's exercise of this discretion is of necessity based upon the evidence which is presented during the trial and the issues which emerge. Therefore, we conclude that it would serve no purpose at this time to review the trial

---

7. Section 47–16–13.2, N.D.C.C., was adopted from the Uniform Residential Landlord and Tenant Act. We have been unable to locate any cases from other jurisdictions which have adopted the Uniform Act that construe the term "knowingly permit," nor is the legislative history of Section 47–16–13.2 enlightening on this point.

8. Because our Rule 49(a) is adopted from the corresponding Federal rule, we will look to interpretive Federal case law for guidance in construing our rule. See *State v. Manke*, 328 N.W.2d 799 (N.D.1982).

court's determination of this issue at the first trial, inasmuch as we are remanding for a new trial. The state of the evidence and issues will undoubtedly be somewhat different on retrial, and it is for the trial court on the basis of the record on retrial to initially exercise its discretion in determining whether, and in what form, to submit a special verdict.

## V. DENIAL OF MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

After trial, Doris made a motion for judgment notwithstanding the verdict, alleging that the evidence was insufficient to support the verdict. The court denied the motion, and Doris has appealed from the order denying the motion.

 A court should enter judgment notwithstanding the verdict only where the evidence is such that, without weighing the credibility of witnesses or otherwise considering the weight of the evidence, reasonable men could reach but one conclusion as to the verdict. *Roberts v. Hail Unlimited*, 358 N.W.2d 776 (N.D.1984). Only if the trial court determines that the evidence does not present a question of fact for the jury is the moving party entitled to judgment on the merits as a matter of law. *Okken v. Okken*, 325 N.W.2d 264 (N.D. 1982); *South v. National Railroad Passenger Corp.*, 290 N.W.2d 819 (N.D.1980). In determining if the evidence is sufficient to create an issue of fact, the trial court must employ a rigorous standard with a view toward preserving verdicts. *Okken v. Okken, supra.* The evidence must be viewed in the light most favorable to the non-moving party [*Riebe v. Riebe*, 252 N.W.2d 175 (N.D.1977)] and the court must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable inferences from that evidence which support the verdict [*Okken v. Okken, supra* ].

 Although we have concluded that the evidence was insufficient to satisfy the "exclusive control" element of res ipsa loquitur, we are unwilling to extend that conclusion to overturn the court's refusal to enter judgment notwithstanding the verdict. Under the circumstances of this case, where the jury was incorrectly instructed on res ipsa loquitur, it is appropriate to remand the case for a new trial before a new jury with proper instructions. We conclude that the trial court did not err in denying the motion for judgment notwithstanding the verdict.

The judgment is reversed and the cause is remanded to the district court for a new trial in accordance with this opinion.

ERICKSTAD, C.J., and GIERKE, J., concur.

Surrogate Justice PEDERSON participated in this case by assignment pursuant to § 27–17–03, N.D.C.C.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this court at the time this case was submitted; Meschke and Levine, JJ., not being members at that time, did not participate.

PEDERSON, Surrogate Justice, concurring specially.

I agree that the judgment must be reversed and the case remanded for a new trial and I concur in most of the statements of the law written by Justice VandeWalle. I do not agree that upon the retrial, the police report that contains no factual findings should be excluded even though it might appear to be inadmissible when evaluated under Rule 803(8)(iii). That rule merely does not apply.