1998 ND 62

**Brian A. ROBERT and Robert's Aerial Service, Inc., Plaintiffs and Appellees,**

v.

**AIRCRAFT INVESTMENT COMPANY, INC., Defendant and Appellant.**

**Civil No. 970219.**

Supreme Court of North Dakota.

March 26, 1998.

Paulson and Merrick, Jamestown, for plaintiffs and appellees; argued by Terence J. Paulson.

Jeffries, Olson, Flom & Bullis, P.A., Moorhead, for defendant and appellant; argued by Ronald J. Knoll.

MESCHKE, Justice.

[¶ 1] Aircraft Investment Co., Inc. (AIC) appealed a judgment ordering it to pay $69,-891.72 in damages and costs to Brian Robert for AIC's negligent failure to install a part when it replaced an aircraft engine. We affirm.

[¶ 2] Robert, a crop sprayer for over 30 years, purchased an Ag–Cat plane in July 1983 for $45,000.00 to use in his business, Robert's Aerial Service, Inc. In 1991, after nearly 864 hours of use as a spray plane, the Ag–Cat was running poorly, and Robert took it to AIC for repairs. After testing, AIC recommended the engine be replaced, and Robert agreed to have AIC install a "new" rebuilt engine. Robert located a replacement engine at Sky Tractor Supply, and AIC installed it between July 24 and August 2, 1991.

[¶ 3] Robert then used the Ag–Cat for nearly 700 hours more crop spraying when, in late May or early June 1995, he noticed the propeller assembly was leaking oil. Robert's mechanic, Edward Martin, investigated the leak and removed the propeller. On removal, Martin discovered the rear cone was missing from the propeller assembly and the crankshaft was damaged. Because the propeller had not been removed since the 1991 engine replacement by AIC, Robert believed the cone was missing from AIC's negligent failure to install it when they replaced the engine.

[¶ 4] Robert contacted AIC and waited to hear from it on the missing cone and the resulting damage to the engine. While waiting, Robert rented a plane from Riddell Flying Service, Inc. to replace the damaged Ag–Cat for the remainder of the 1995 crop spraying season. As needed, Robert also hired other planes and pilots for specific spraying jobs.

[¶ 5] In late July, Robert replaced the damaged Ag–Cat engine with a rebuilt engine at a cost of $16,950.00. Robert also supplied a core, valued at $8,000.00, for this replacement.

[¶ 6] In 1997, Robert sued AIC, alleging AIC negligently failed to install the rear cone and thus caused the damage to the engine. Robert sought damages for the repair of the Ag–Cat and for loss of its use during the 1995 crop spraying season. After a trial without a jury, the trial court found Robert had satisfied the requirements of the res ipsa loquitur doctrine and thus proved AIC had been negligent. The court entered a $69,-891.72 damage judgment for Robert. AIC appealed.

[¶ 7] AIC argues the trial court's finding of negligence was clearly erroneous because there was no evidence for application of the res ipsa doctrine. As we explained in *Victory Park Apartments, Inc. v. Axelson,* 367 N.W.2d 155, 159, n. 2 (N.D.1985) (citations omitted), "[a]lthough labeled a doctrine, res ipsa loquitur is not a rule of substantive law but is a principle of evidence." "Negligence must be affirmatively proved, and will not be presumed merely from the occurrence of the accident or damages." *Id.* at 158. However, negligence may be proved by circumstantial evidence, and the res ipsa doctrine is a form of circumstantial evidence. *Id.* at 159. In *Victory Park Apartments,* we explained how the doctrine works:

As applied in this State, res ipsa loquitur allows the fact-finder to draw an inference that the defendant's conduct was negligent if the following foundational facts are proved: (1) the accident was one which does not ordinarily occur in the absence of negligence; (2) the instrumentality which caused the plaintiff's injury was in the exclusive control of the defendant; and (3) there was no voluntary action or contribution on the part of the plaintiff.

*Id.* In this case, the trial court's conclusions and findings reflect the essential elements of res ipsa:

6. A cracked crankshaft does not ordinarily occur in the absence of negligence.

7. The rear cone is the instrumentality that caused plaintiffs' injury and the rear cone was in the exclusive control of the defendant.

8. It is foreseeable that if the rear cone is missing the crankshaft will crack.

9. Plaintiffs were not contributorily negligent.

Because the evidence supports the trial court's conclusions of law and findings of fact, we conclude the trial court did not err in finding AIC had been negligent.

■ [¶ 8] AIC argues finding 7 was erroneous, and res ipsa was inapplicable, because "AIC did not have exclusive control and custody of the Ag–Cat during the four-year time period preceding the damage to the airplane." However, the trial court concluded the instrumentality that caused the injury was the rear cone, and it "was in the exclusive control of the defendant" at the critical time. As explained by *Prosser and Keeton on the Law of Torts* § 39, at 248–49 (5th ed.1984)(omitting footnotes and paraphrasing for this case):

> Even though there is beyond all possible doubt negligence in the air, it is still necessary to bring it home to the defendant.... The injury must either be traced to a specific instrumentality or cause for which the defendant was responsible, or it must be shown that the plaintiff was responsible for all reasonably probable causes to which the accident could be attributed.... [Causation] evidence need not be conclusive, and only enough is required to permit a finding as to the greater probability. The plaintiff is not required to do the impossible by accounting for every moment of the [propeller assembly] since it left the defendant's [shop]; and it is enough if the plaintiff produces sufficient evidence of careful handling in general, and of the absence of unusual incidents, to permit reasonable persons to conclude that, more likely than not, the event was due to the defendant's negligence.

Robert's evidence traced the cause of the engine damage to AIC's failure to install the rear cone when it replaced the engine.

[¶ 9] At trial, AIC and Robert each presented evidence that the other was negligent and responsible for the cone's absence. AIC's witnesses testified the rear cone had been installed during the engine replacement in 1991. It was not disputed the Ag–Cat was turned over to Robert immediately after AIC's work, and he used the Ag–Cat in his crop spraying business during the next four years. During that time, Robert had various mechanics do maintenance checks and minor repairs on the Ag–Cat, but Robert and his mechanics testified the Ag–Cat logbook showed no work had been done on the propeller or propeller assembly since AIC's 1991 engine replacement. Robert testified the rear cone was first discovered missing when the propeller was removed in his shop in 1995. From the evidence, the trial court found "[t]he prop had not been removed prior to the discovery of the oil leak following the installation of the engine by AIC."

■ [¶ 10] Thus, AIC and Robert each presented conflicting evidence. The trial court considered all the evidence and found for Robert. We are directed to give "due regard ... to the opportunity of the trial court to judge the credibility of the witnesses." *N.D.R.Civ.P. 52(a)(part)*. "We will not reexamine findings of fact made by the trial court upon conflicting evidence, and a choice between two permissible views ... is not clearly erroneous." *Buzick v. Buzick,* 542 N.W.2d 756, 758 (N.D.1996) (citations omitted). As we explained in *Mahoney v. Mahoney,* 538 N.W.2d 189, 193 (N.D.1995), "we do not retry the case to substitute findings we might have made for those the trial court makes when reasonable evidence in the record supports the findings made." Here, reasonable evidence supported the findings that AIC was negligent, and we affirm the trial court's judgment for Robert.

[¶ 11] AIC contends the $69,891.72 damage award is erroneous and "provided Robert with a windfall." We disagree.

■ [¶ 12] The measure of damages to property from a tort is the lower of the "cost to repair" or the "diminution in value" of the damaged property. NDCC 32–03–09.1. The statute also authorizes compensation for the loss of use of the property pending its restoration or replacement. *Id.* Additional dam-

ages are thus allowed for loss of use if it "can be established by competent evidence." *Lang v. Wonnenberg*, 455 N.W.2d 832, 840 (N.D.1990) (quoting *Weld County Bd. of County Comm'rs v. Slovek*, 723 P.2d 1309, 1317 (Colo.1986)). Here, the damages awarded to Robert covered both cost of repair and loss of use, including the cost to rent replacement planes for crop spraying.

[¶ 13] AIC argues the appropriate measure of damages in this case was limited to diminution in value and loss of use. "[W]hen either diminution in value or cost of restoration are appropriate measures of damages in a given case, the plaintiff has the right to elect the measure deemed more accurate and if the defendant disagrees, he has the burden to prove the alternative measure is more appropriate." *Lang*, 455 N.W.2d at 839. Although AIC claims the diminution in value would have been less than the cost of repair, AIC did not offer evidence on the value of the Ag–Cat before and after it was damaged to prove the amount of diminution in value, and therefore failed to prove decreased value was the more appropriate measure of damages than cost of repair. We conclude the trial court did not err in awarding damages for the cost of repair.

[¶ 14] Robert testified the repair parts cost $24,950.00. Robert's own mechanics made the repair, and Robert did not claim these labor costs as damages. At trial, AIC did not contend the repair costs were unreasonable. On appeal, however, AIC contends the cost of repair should have been reduced by the salvage value of the engine, propeller, and core. However, AIC developed no evidence of the salvage value of these parts. A reduction for the value of salvage was not sought at trial and, as we explained in *Messer v. Bender*, 1997 ND 103, ¶ *10*, 564 N.W.2d 291 (quoting *Eastburn v. B.E.*, 545 N.W.2d 767, 773 (N.D.1996)), " '[w]e do not consider questions that were not presented to the trial court and that are raised for the first time on appeal.' "

[¶ 15] In addition to the cost of repair, the trial court awarded Robert $44,564.00 in damages for loss of use of the Ag–Cat until it was repaired. These costs included $31,-023.41 for hiring pilots and their planes to do crop spraying Robert was unable to complete because the Ag–Cat was out of service; $9,357.06 for a rental plane and expenses; $1,608.00 for insurance; and $2,575.00 for the AIC repair bill. AIC argues charges for the rental planes were excessive because the trial court failed to deduct costs Robert customarily incurred doing business.

[¶ 16] After the damage to the Ag–Cat was discovered in 1995, Robert testified he "hired aircraft and rented airplanes to make up for the one that was down." Robert paid pilots, using their own planes, 60% of what he charged his customers. As he did with his own planes, Robert supplied all the fuel for the substitute planes. AIC contends the damages for loss of use should have been reduced by Robert's other customary business expenses. However, AIC failed to assemble evidence itemizing Robert's out-of-pocket business expenses before and during the period the Ag–Cat was replaced by rental planes. Thus, there was no evidence of other costs in the trial to support AIC's contention that Robert's claimed damages for loss of use should be reduced by other usual costs not incurred with the replacements.

[¶ 17] In addition, AIC argues the loss of use award was excessive because Robert failed to mitigate damages by promptly repairing or replacing the Ag–Cat's damaged engine. Robert testified an engine replacement can be accomplished in about one week if a suitable engine can be located. Robert said he did not attempt to locate a replacement engine immediately after the damage to the Ag–Cat was discovered because he had been waiting for a response from AIC. AIC did not offer evidence that an engine was available sooner. Without evidence on the earlier availability of a suitable replacement engine and parts, AIC's request for a reduction of damages because of a lack of mitigation was unsupported. After a full review of the record, we conclude the trial court did not err in awarding damages for the costs of rental planes and pilots.

[¶ 18] Lastly, AIC argues the trial court's award of damages for insurance on the Ag–Cat was duplicative since insurance

on the replacement planes was part of their rental cost included in his damage award. Again, this item was questioned for the first time on appeal. As we explained earlier, quoting *Messer v. Bender*, 1997 ND 103, ¶ 10, 564 N.W.2d 291, we do not consider an issue first raised on appeal.

[¶ 19] We affirm the judgment of the trial court.

[¶ 20] VANDE WALLE, C.J., and SANDSTROM, NEUMANN and MARING, JJ., concur.