MAX MILEUR, Plaintiff-Appellant, *v.* HERMAN F. BRIGGERMAN, Defendant-Appellee.

Fifth District    No. 81—583

Opinion filed November 9, 1982.

722

Harris, Lambert & Wilson, of Marion, for appellant.

Charles E. Schmidt, of Mitchell, Brandon & Schmidt, of Carbondale, for appellee.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Max Mileur, brought this action against defendant, Herman F. Briggerman for money damages for personal injuries sustained by him in a hunting accident occurring on April 20, 1977, in Union County, Illinois. The jury returned a verdict for the plaintiff and determined his damages to be $2,700.89; it further found that plaintiff's negligence in the amount of 50% contributed to cause the accident and judgment was entered for plaintiff for $1,350.45, from which plaintiff appeals.

On appeal, plaintiff contends that the trial court should have granted judgment notwithstanding the verdict on the issues of plaintiff's negligence and his damages or, in the alternative, grant a new trial on these issues because the jury's verdict was contrary to the manifest weight of the evidence. Plaintiff further contends that the trial court should have granted a mistrial because of certain prejudicial remarks made by defense counsel before the jury. Plaintiff also maintains that the trial court erred in overruling plaintiff's objection to defendant's testimony regarding the customary dress worn by hunters in deer hunting. Finally, plaintiff contends that the trial court

erred in giving defendant's jury instructions over plaintiff's objections.

On April 20, 1977, plaintiff was turkey hunting alone on Hudson Creek in Union County. After about 15 minutes, plaintiff, who was dressed in camouflage, decided to move to a different location. He began to move from his seated position and leaned over on his knees to place his hands on a tree to assist in raising himself. While plaintiff was on his hands and knees, he shook both of his feet sideways because mosquitoes were biting him around the ankles. Plaintiff stated that he thought he heard a noise and then saw the defendant standing 40 or 50 yards from him. When defendant's gun went off, plaintiff jumped and was shot in the foot, side of the leg, left shoulder and chest.

After the accident, plaintiff declined defendant's offer of assistance and drove himself to the Anna Hospital where he was examined by Dr. Thomas W. Davis. Dr. Davis took X rays, gave him a shot, some medication for pain and an antibiotic and told him to see his family physician in Belleville. The next day plaintiff visited Dr. Haskins who gave him a tetanus shot and some antibiotics and advised him to rest. Dr. Haskins suggested that plaintiff return if he experienced any trouble. Plaintiff did not return and received no further medical care for nearly two years when he was examined by Dr. Cesar Climaco in Belleville on April 30, 1979. Plaintiff then went almost another year before seeking treatment, this time from Dr. Karen Ann Strack in Murphysboro, Illinois, on March 11, 1980.

Plaintiff missed nine days' work as a result of the accident and testified that he lost $694.99 in wages, according to his employer's records. Plaintiff testified that since the incident he has had continual pain which has become worse. He stated that he has had difficulty sleeping and takes a pain killer in order to sleep. Plaintiff further testified that he has scars up and down his legs and that there are between 15 and 20 shot lodged within his leg.

On cross-examination, plaintiff stated that he was shot as he shook his feet. He noted that the defendant was behind him and to his left and there was nothing between them. Plaintiff further testified that when hunting he keeps a good lookout for turkeys, but not for other hunters.

The defendant was called as an adverse witness and testified that he shot the plaintiff. He stated that he saw some movement, raised his shotgun, saw more movement, shouldered his shotgun and fired. He testified that all this occurred in a matter of seconds and that it was the movement that got his attention.

Dr. Thomas M. Davis testified on behalf of the plaintiff and stated that he saw the plaintiff once, on April 20, 1977, at the Union County Hospital emergency room. He testified that he observed multiple puncture wounds in the area of the right foot, thigh and left shoulder and chest and stated that X rays revealed small metallic pellets in these areas. Dr. Davis stated that providing there was no infectious process, he expected the plaintiff to have a full recovery with no significant residual or permanent disability.

Plaintiff was next examined on April 22, 1977, by Dr. Haskins. A report prepared by Dr. Haskins, introduced into evidence by stipulation, stated that he recommended that plaintiff return if he had any problems, "but for certain within ten days." Plaintiff never returned.

Dr. Cesar D. Climaco testified that he examined plaintiff on April 30, 1979. He took an X ray of the plaintiff and round metallic pellets in his foot. Dr. Climaco stated that the only treatment would be to remove surgically the pellets but he did not feel this was appropriate because they are difficult to find and removal would do more damage.

Dr. Karen Ann Strack testified that she first examined plaintiff on March 11, 1980, and that he complained of pain in the legs and feet, particularly after standing for a long time. Dr. Strack further testified that the X ray revealed small found metallic foreign bodies in plaintiff's leg, foot and buttocks. She stated that the pellets could have been removed surgically but the chance of creating more scar tissue and more nerve and muscle damage would far outweigh the benefits hoped to be achieved.

On February 25, 1981, plaintiff visited Dr. Strack for a second time and complained of the same problem as before along with some swelling and generalized heat and redness in the feet. She stated that she felt that a large portion of the pain was attributable to the shot and that he would probably continue to suffer for the rest of his life. Her prognosis was that this was a chronic condition which would probably get worse. She said that she anticipated no other future medical care, other than treatment of sterile abscess or local infection should it occur.

A jury trial was scheduled for March 12, 1980, and on March 2, 1981, but was continued for both times. In the presence of the jury, defense counsel requested the court to take judicial notice of these prior trial settings and their close proximity to the examinations by Dr. Strack. The court denied this request and also plaintiff's motion for mistrial based on the prejudicial nature of this remark before the jury.

Plaintiff's counsel then moved the court to direct a verdict in

plaintiff's favor and against defendant on the issue of defendant's negligence and plaintiff's freedom from contributory negligence. The court denied these motions.

Plaintiff's first contention on appeal is that judgment notwithstanding the verdict should have been entered as to the finding that plaintiff was 50% negligent because there was no evidence of negligence on his part, and that the evidence established defendant's negligence as a matter of law. The standard of review to be applied by this court in deciding whether judgment notwithstanding the verdict should be entered is whether all the evidence, viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

Defendant contends that plaintiff was negligent in failing to maintain a proper lookout for other hunters. Such an omission is particularly important, defendant argues, in view of the fact that plaintiff was dressed in complete camouflage. Defendant testified that such camouflage makes it difficult to distinguish hunters from game and requires hunters to maintain a proper lookout. Defendant contends that had plaintiff maintained a proper lookout he would have seen defendant and could have said something to him before he fired.

A review of the record indicates that defendant mistakenly places responsibility for preventing the accident on the plaintiff. It was, after all, defendant who mistook the six foot three inch, 250 pound plaintiff for a turkey and fired the shot injuring him. Plaintiff was not required to anticipate that another hunter would mistake him for a turkey. Furthermore, plaintiff was shot from behind and had virtually no time to react. If plaintiff's camouflage clothing contributed in any way to the accident it is because defendant did not adequately determine the nature of his target. Defendant, by his testimony, indicated that he was aware that turkey hunting required complete camouflage and should have expected a hunter to be so dressed, as he too was dressed.

As proof of plaintiff's negligence, defendant relies heavily on plaintiff's statement that when he hunts turkey he maintains a good lookout for turkeys, but not other hunters. Such reliance is misplaced because plaintiff's testimony merely reflects the common sense notion that turkey hunting requires a hunter to direct his attention toward turkeys. The statement also reflects plaintiff's reasonable expectation of not being mistaken for a turkey by other hunters.

■ We believe that the evidence, taken as a whole, does not support the jury's finding of negligence on the part of the plaintiff but

does demonstrate defendant's negligence as a matter of law. The trial court, therefore, erred by not entering judgment notwithstanding the verdict for the plaintiff on the issue of liability and plaintiff's freedom from contributory fault.

Plaintiff further challenges the jury's verdict on the ground that the damage award is inadequate. Plaintiff contends the jury ignored certain uncontradicted evidence as to his disability and disfigurement as well as certain medical bills for treatment rendered by Dr. Climaco and Dr. Strack.

Generally, the question of damages is peculiarly one of fact for the jury, and courts are reluctant to interfere with the jury's exercise of its discretion. (*Duncan v. Peoria Yellow Checker Cab Corp.* (1977), 45 Ill. App. 3d 653, 359 N.E.2d 1242.) In *Duncan*, however, the court went on to state that a verdict should be set aside and a new trial granted for inadequacy of damages where it is clear that injustice has been done, or where it is obvious that the jury failed to take into consideration proper elements which are clearly proven.

In the case at bar, plaintiff testified that since the accident he has pain all of the time and it is getting worse. He stated that the pain is such that he is unable to sleep without pain killers. Dr. Strack testified that the pellets scarred his skin and characterized his condition as chronic and progressive. Despite this uncontradicted testimony, the jury, in an itemized verdict, failed to make any provision in plaintiff's award for disability and disfigurement; although, it did award plaintiff $1,000 for pain and suffering. Furthermore, the jury did not include the medical expenses stemming from plaintiff's examinations by Dr. Climaco and Dr. Strack even though both physicians testified that their services were necessary and the charges for those services were the usual and customary charges.

While we cannot say that the damage award would be inadequate as a matter of law if the trial had been free from prejudicial error, we cannot conclude that the award which apparently ignored the testimony of Dr. Strack was not the result of the improper attack on her credibility and the credibility of the plaintiff by defendant's counsel's suggestion, not based on competent evidence, that the case was twice continued so that plaintiff could find medical testimony favorable to his cause. This would suggest to the jury that plaintiff's complaints of pain and disability and Dr. Strack's testimony relating thereto were not worthy of belief. We note that defendant presented no contrary medical testimony.

The trial court was entitled to take judicial notice of proceedings before it and the contents of court records relating thereto. (*Rock Is-*

*land Bank & Trust Co. v. Stauduhar* (1978), 59 Ill. App. 3d 892, 375 N.E.2d 1383.) Defense counsel's request for judicial notice was improper in the instant case, however, because it implied that plaintiff's visits to Dr. Strack were for the purpose of eliciting favorable testimony. Counsel may not supply facts or inferences in arguments not based on evidence of record. *Tarasuik v. Russell* (1964), 49 Ill. App. 2d 418, 199 N.E.2d 629.

Dr. Strack testified that the services she rendered were necessary in connection with plaintiff's care and treatment. This statement, taken together with Dr. Strack's testimony that plaintiff was in pain which would probably continue for the rest of his life, indicates that the examination was motivated by medical considerations. The mere fact that Dr. Strack advised against surgically removing the pellets does not support the conclusion that plaintiff visited her in order to obtain favorable testimony.

■ Remarks of trial counsel may be of such prejudicial nature as to require reversal despite corrective action of the trial judge. (*Walters v. Taylor* (1976), 36 Ill. App. 3d 934, 344 N.E.2d 765.) In the present case, the damage from defense counsel's statements occurred when the jury was exposed to his request for judicial notice. Although this request was denied, the prejudice which resulted is apparent from the jury's failure to include Dr. Strack's medical bills in the verdict. The highly prejudicial nature of defense counsel's remarks requires that a new trial be granted on the issue of damages.

Plaintiff further contends that the trial court erred in admitting defendant's testimony regarding deer hunting. During direct examination, defendant testified that a hunter wears bright orange clothing when hunting deer as compared to turkey hunting where camouflage is necessary. Plaintiff maintains that this testimony is prejudicial because it implied that plaintiff should have worn bright clothing to prevent his being mistaken for game.

■ Although this testimony was not relevant to the question of plaintiff's negligence, its admission does not constitute prejudicial error. The jury was adequately informed by both parties that camouflage clothing was customary for turkey hunters. Furthermore, plaintiff cannot properly argue that the defendant's testimony was prejudicial because, on direct examination, plaintiff made a similar comparison.

Plaintiff's final contention is that the trial court erred in giving defendant's jury instructions over plaintiff's objections. Plaintiff argues that defendant's instruction No. 7, the burden-of-proof instruction, was improper because it stated that plaintiff had the burden of

proving that he was using ordinary care for his own safety. Additionally, plaintiff contends that the last paragraph of the instruction was misleading and confusing and did not correctly state the law. We need not detail plaintiff's objections to these instructions as the only issue to be retried will be the amount of plaintiff's damages. Furthermore, the Supreme Court Committee on Jury Instructions in Civil Cases has recently issued its series "A" instructions on comparative negligence, and future cases will be governed by these instructions, which reflect the current state of the law under *Alvis*.

Since the Illinois Supreme Court adopted comparative negligence in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, it has been the law of this State that a plaintiff in a negligence action need not prove that he exercised due care for his own safety. Prior to *Alvis*, a plaintiff was required to prove his own exercise of due care as an essential element of his negligence action. (*Carter v. Winter* (1965), 32 Ill. 2d 275, 282, 204 N.E.2d 755, 758.) This change in the law is reflected in Illinois Pattern Jury Instructions, Civil, No. A21.03 (2d ed. 1981 Supp.) (hereinafter cited as IPI Civil), which eliminated plaintiff's burden of proof regarding his use of ordinary care.

■ Defendant maintains, however, that *Alvis* did not change the burden of proof requirement in *res ipsa loquitur* actions such as this case. In support of his argument, defendant notes that no new instruction has been included in the new "A" Series Instructions on comparative negligence for *res ipsa loquitur* cases. This omission, we believe, is no more than an oversight and does not constitute continuing approval of IPI Civil No. 22.01. There is no sound reason why a plaintiff must prove freedom from contributory negligence in a *res ipsa loquitur* case when he is not required to do so in other negligence actions. The trial court's approval of IPI Civil No. 22.01 in the given case constitutes error because that instruction does not reflect the current state of the law.

The second instruction to which plaintiff objected, defendant's instruction No. 8, was IPI Civil No. 36.01. Plaintiff contends that the instruction was improperly given because there was no evidence to justify it. We agree that based on the evidence the jury could not decide the issue of liability in defendant's favor, and the trial court, therefore, erred in giving this instruction.

Plaintiff also contends that the trial court erred in giving defendant's instruction No. 9, IPI Civil No. 10.03 modified. Although defendant's instruction deletes the requirements that the plaintiff be free of contributory negligence, we believe that IPI Civil No. A10.03 is a more accurate statement of the law and should have been given.

For the foregoing reasons, the judgment of the circuit court of Union County is reversed and the cause is remanded for a new trial on the issue of damages.

Reversed and remanded.

JONES and WELCH, JJ., concur.