GERALD JUNKER, Plaintiff-Appellee, v. ALBERT ZIEGLER *et al.*, Defendant-Appellants.

Third District   Nos. 3—83—0376, 3—83—0380 cons.

Opinion filed January 3, 1985.

BARRY, J., dissenting.

Robert D. Jackson and Jeffrey W. Jackson, both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellant Albert Ziegler.

William R. Kohlhase, Bret Babcock, and Robert E. Geiger, all of Davis & Morgan, of Peoria, for appellant Paul Bush.

Frederick W. Allen, of Allen, Clark, Cullinan & Harn, Ltd., of Peoria, for appellee.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

In a personal injury action to recover for the loss of sight in one eye resulting from a hunting accident, plaintiff Gerald Junker was found by the jury to have incurred damages totalling $112,000, but the award to plaintiff was reduced to $39,200 by a further finding that plaintiff's negligence was 65% of the proximate cause of the damages. The trial court granted plaintiff's post-trial motion for a new trial on all issues on the ground that the finding which attributed 65% of the negligence to plaintiff was contrary to the manifest weight of the evidence. This court granted leave to appeal from the new trial order to defendants Albert Ziegler, who fired the shot which struck plaintiff in the eye, and Paul Bush, who owned the hunting club where the accident occurred.

Some recitation of the facts surrounding the accident is necessary to an understanding of the issues raised by this appeal. Bush is the owner and operator of a commercial hunting club near Marion. The club has four blinds or pits on its premises from which customers can shoot geese. Guides are employed to go with customers to the pits and to signal when to shoot at approaching geese. The guides have walkie-talkies to communicate with Bush or his sons at their pickup truck whenever a hunter has shot his quota of two geese and is ready to leave the pit. The customers are transported to and from the pits by the truck.

On November 3, 1980, Junker and his son were hunting at the club. They were assigned to a blind known as the pond pit along

with a guide, while defendant Ziegler and a friend were shooting from the south pit, which was located 20 yards west and 200 yards south of the pond pit. As a goose was approaching from the north, Ziegler fired a shot with his 12-gauge shotgun, using three-inch magnum shells. Junker was watching the goose approach, heard the shot, and continued to observe the goose as it descended. It appeared to touch the ground but to continue moving along or just above the ground, until it was between the two pits. At the direction of his guide, Ziegler then fired another shot at the goose. Junker saw the feathers of the goose ruffle up and then felt a sharp pain in his left eye. It is not disputed that a pellet from Ziegler's shotgun struck plaintiff in the eye, tearing loose part of the iris and causing permanent blindness in that eye.

At trial before a jury, Bush's testimony indicated that the shotgun and ammunition used by Ziegler had a range of 250 to 275 yards. Bush and Ziegler were experienced hunters who knew the range of the shells and who knew that a hunter should never fire a gun in the direction of another person who might possibly be within range. Bush knew that the distance between the two pits was 200 yards and that pellets from guns fired in the south pit sometimes struck persons in the pond pit, since he himself had experienced being sprayed with pellets. Bush had not instructed the guides to prohibit shooting at birds on or near the ground or shooting in the direction of another pit. Shooting was permitted in all directions. Hunters normally stood up in the pit until the guide told them to get down. Junker was also an experienced hunter. He admitted at trial that he knew he was within range of the south pit; yet, he watched the goose descend and land between the two pits and made no effort to crouch down or turn his back.

Plaintiff filed suit against Ziegler for negligently firing a shotgun and injuring plaintiff, and he sued Bush for negligently constructing and operating his hunting club and for failing to warn customers not to shoot toward other occupied pits. Ziegler filed a counterclaim against Bush for contribution. As previously indicated, the jury returned a verdict finding plaintiff's damages to be $112,000, but, under the doctrine of comparative negligence, the jury attributed 65% of the damage to plaintiff and 35% to the two defendants. As between the defendants, the jury apportioned 71% of the negligence to Bush and 29% to Ziegler.

The sole issue before this court is whether the trial court erred in ordering a new trial on the grounds that the jury's finding that plaintiff was 65% contributorily negligent was against the manifest

weight of the evidence. We hold that the trial court should not have granted a new trial.

By granting a new trial the trial court acknowledged that plaintiff was guilty of some negligence. Had this not been the case, the trial judge would have directed a verdict in favor of plaintiff for the full award of damages. (See *Mileur v. Briggerman* (1982), 110 Ill. App. 3d 721, 442 N.E.2d 1356.) Because the judge granted a new trial rather than direct a verdict, we interpret the court's action to mean that the trial court found the jury's apportionment of damages improper.

■ The standard to be applied by a trial judge in granting a new trial on the apportionment of damages should be no different than the standard applied in granting a new trial as to total damages. The general rule governing when a verdict may be overturned as to total damages is when the amount of the verdict bears no reasonable relationship to the loss suffered.

■ In other words, the verdict must be within the range of the evidence. In this case, the defendants' theory and evidence clearly support the jury's conclusion that plaintiff was negligent. We also believe that 65% negligence bears a reasonable relationship to the loss suffered. The Illinois Supreme Court has often cautioned that a verdict should not be set aside merely because different conclusions could be drawn or because the judges feel that other results are more reasonable. (See *Finley v. New York Central R.R. Co.* (1960), 19 Ill. 2d 428, 167 N.E.2d 212; *Jardine v. Rubloff* (1978), 73 Ill. 2d 31, 382 N.E.2d 232.) Clearly, a jury should be granted as wide a latitude in apportioning damages as it is in determining total damages and other aspects of liability in negligence cases.

The defendants' theory developed at trial was that plaintiff was negligent by continuing to stand erect facing in the direction of defendant Ziegler's blind when he knew he was within range. The evidence elicited at trial supports defendants' theory—plaintiff himself testified that he knew he was within range and that he knew if defendant Ziegler shot in his direction the shot could injure his eye. Therefore, we find that there was sufficient evidence to support a finding by the jury that plaintiff was 65% negligent.

■ Plaintiff also argues that he was not negligent as a matter of law, based largely upon a case recently decided by the Fifth District, *Mileur v. Briggerman* (1982), 110 Ill. App. 3d 721, 442 N.E.2d 1356. In *Mileur* the court directed a verdict in favor of plaintiffs based upon the fact that the plaintiff had no reason to anticipate that defendant would mistake him for a turkey. The facts in the instant

case are clearly different. Here plaintiff knew defendant Ziegler was shooting, he knew he was shooting at the goose which had landed between their pits and he knew he was within range of Ziegler's pit. Merely because plaintiff did not expect Ziegler to violate a cardinal rule of hunting does not equate this situation with the facts present in *Mileur*. In *Mileur*, the plaintiff was shot from behind by another hunter of whose presence plaintiff was unaware. Therefore, the *Mileur* case is readily distinguishable. Further, as previously mentioned, there is no indication that this trial court found plaintiff innocent of any negligence as a matter of law.

We, therefore, reverse the decision of the circuit court of Peoria County granting a new trial and remand this case with instructions to enter a verdict consistent with the jury's verdict.

Reversed and remanded.

SCOTT, J., concurs.

JUSTICE BARRY, dissenting:
The majority has adopted the view of the evidence advanced by defendants that plaintiff was negligent in that he continued to stand erect in the pit, looking at the goose after the first shot was fired in his direction by Ziegler and while the goose was landing in between the two pits. As defendants describe these events, the first shot came close to plaintiff, and yet plaintiff continued to gaze in the direction of the gun and continued to stand in the line of fire when he should have taken reasonable steps to protect himself by crouching down in the pit or at least by turning his head away from the direction of the gunfire.

My reading of the report of proceedings indicates that this scenario is not supported by the evidence in the record. According to the witnesses at trial, the first shot was fired at the goose in the air and was directed off to the side of the pit in which plaintiff was standing, not at the plaintiff's pit. As the goose came in for its landing, plaintiff remained where he had been, and, by my view, where he had a right to be, watching the approaching goose. Plaintiff had no reason to expect that a hunter, being directed by a trained guide, would violate one of the basic rules of hunting safety by firing at a low level trajectory in the direction of other persons.

Contrary to the majority, I believe the principles of the *Mileur* case *are* applicable to the case at bar. In *Mileur v. Briggerman* (1982), 110 Ill. App. 3d 721, 442 N.E.2d 1356, a turkey hunter was

mistaken for a turkey and was shot by another hunter. The plaintiff had testified that he did not see the other hunter, and that when he hunted, he kept a good lookout for turkeys, not other hunters. The jury found plaintiff's negligence to have amounted to 50% of the cause of the accident. The appellate court reversed and remanded for a new trial on the issue of damages, ruling that the defendant was negligent as a matter of law and also that plaintiff was free from contributory negligence as a matter of law and, therefore, that the trial court erred in failing to enter a judgment notwithstanding the verdict for the plaintiff as to liability and freedom from contributory fault. In discussing the defendant's contention that plaintiff was negligent in failing to keep a proper lookout for other hunters, the court stated:

> "A review of the record indicates that defendant mistakenly places responsibility for preventing the accident on the plaintiff. It was, after all, defendant who mistook the six foot three inch, 250 pound plaintiff for a turkey and fired the shot injuring him. Plaintiff was not required to anticipate that another hunter would mistake him for a turkey." 110 Ill. App. 3d 721, 725, 442 N.E.2d 1356.

The law does not require plaintiff to anticipate the negligence of others, but rather he may assume that others will not be negligent. (*Johnston v. V.H. Flannery Building Materials, Inc.* (1955), 6 Ill. App. 2d 35, 126 N.E.2d 510; *Geraghty v. Burr Oak Lanes, Inc.* (1955), 5 Ill. 2d 153, 125 N.E.2d 47.) To find plaintiff negligent under the facts of the instant case would, in effect, impose a duty upon him to anticipate another hunter shooting at him. Such a requirement would be erroneous. Here, defendants Ziegler and/or Bush failed to observe the standard rules of hunting safety, and they are, therefore, responsible for plaintiff's injury. I would hold that plaintiff was free from negligence as a matter of law and that a judgment notwithstanding the verdict should have been entered in plaintiff's favor.

As a consequence of my view that the liability rests upon one or both defendants, but not plaintiff, I would order a new trial solely on the issues of damages.