Michael MCGUIRE and Elaine McGuire, and Michael McGuire as Natural Father and Next Friend of Colleen McGuire, a Minor, Plaintiffs,

v.

DAVIDSON MANUFACTURING COR-PORATION, and Louisville Ladder Group LLC, Defendants.

No. C01–4063–PAZ.

United States District Court,
N.D. Iowa,
Western Division.

April 18, 2003.

Martin E. Spellman, Christine Marie Creighton, Spellman, Spellman, Spellman, Spellman, Kealhofer & Spellman, Perry, IA, Michael Figenshaw, Bradshaw, Fowler, Proctor, Fairgrave, Des Moines, IA, E. Terry Sibbernsen, E. Terry Sibbernsen, PC, Omaha, NE, for Plaintiffs.

Harold D. Dawson, Daniel E. DeKoter, DeKoter, Thole & Dawson, PLC, PC, Sibley, IA, for Davidson Mfg. Corp.

Harold D. Dawson, Daniel E. DeKoter, DeKoter, Thole & Dawson, PLC, Sibley, IA, Adam A. Edwards, Blackwell, Sanders, Peter & Martin, Kansas City, MO, William A. Lynch, Husch & Eppenberger, LLC, Kansas City, MO, for Emerson Electric and Louisville Ladder Group LLC.

## ORDER ON POST–TRIAL MOTIONS

ZOSS, United States Magistrate Judge.

### TABLE OF CONTENTS

I. **BILL OF COSTS** .................................................. 948
 A. *Van Bree Deposition* ....................................... 948
 B. *Dr. Hall's Trial Transcript* ............................... 949
 C. *J.B. Sevart's Air Fare* .................................... 949
 D. *Conclusion* ................................................ 949

II. **MOTION FOR JUDGMENT AS A MATTER OF LAW OR TO AMEND THE JUDGMENT** ...................................................... 949
 A. *Standard of Review* ........................................ 950
 B. *Res Ipsa Loquitur Doctrine* ................................ 950
 C. *Contributory Fault* ........................................ 952
 D. *Ordinary Care* ............................................. 953
 E. *Exclusive Control* ......................................... 954
 F. *Change in Condition* ....................................... 955
 G. *State of the Art Defense* .................................. 955
 H. *Conclusion* ................................................ 958

This matter is before the court on two matters: the defendants' objections to the plaintiffs' Bill of Costs, and the defendants' motion for judgment as a matter of law. In this case, the plaintiff Michael McGuire fell and was injured when a ladder on which he was standing broke. He brought this action against the defendants, the ladder manufacturer and its successor, on

three theories: design defect, manufacturing defect, and general negligence. The jury found there was no defect in the ladder's design; there was a manufacturing defect, but the ladder was manufactured in accordance with the state of the art; and the plaintiffs were entitled to recover on a general negligence/*res ipsa loquitur* theory. The defendants have moved for judgment as a matter of law on several grounds. The court addresses each of the defendants' motions below.

## I. BILL OF COSTS

On February 12, 2003, the plaintiffs filed their Bill of Costs in accordance with 28 U.S.C. sections 1920 and 1924, together with a supporting brief. (Doc. Nos. 89 & 90) Costs were taxed by the Clerk of Court pursuant to Federal Rule of Civil Procedure 54(d) on March 17, 2003, in the amount of $9,828.36. On March 4, 2003, the defendants asserted an objection to three items contained in the plaintiffs' Bill of Costs. (Doc. No. 88) The court finds the defendants' objection was timely filed pursuant to Rule 54(d).

■■■ Before considering each of the defendants' objections in turn, the court notes it has "substantial discretion in awarding costs to a prevailing party under 28 U.S.C. § 1920 ... and Fed.R.Civ.P. 54(d)." *Richmond v. Southwire Co.*, 980 F.2d 518, 520 (8th Cir.1992). Further, as the Eighth Circuit Court of Appeals noted in *Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494 (8th Cir.2002):

> When an expense is taxable as a cost, however, there is a strong presumption that a prevailing party shall recover it "in full measure." *In re Paoli [R.R. Yard PCB Litigation]*, 221 F.3d [449,] 462, 468 [(3d Cir.2000)]; *see Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 363 (8th Cir.1997). The "losing party bears the burden of making the showing that an award is inequitable under the cir-

cumstances." *In re Paoli*, 221 F.3d at 462–63.

*Id.*, 309 F.3d at 498. *See Bathke v. Casey's Gen. Stores, Inc.*, 64 F.3d 340, 347 (8th Cir.1995) (Rule 54(d) "codifies the presumption that ... costs will be awarded to prevailing parties.") (internal quotation marks and citation omitted).

### A. Van Bree Depositions

■■ The defendants first object to the plaintiffs' recovery of $968.80 for two depositions of Michael Van Bree. They note Mr. Van Bree was not called as a witness by any part at trial, and argue his depositions were "not reasonably necessary to the case," and not properly taxable as costs. (Doc. No. 88, p. 2, citing *Chester v. Northwest Iowa Youth Emergency Center*, 158 F.R.D. 626, 632 (N.D.Iowa 1994); *Yaris v. Special Sch. Dist. of St. Louis County*, 604 F.Supp. 914, 915 (E.D.Mo.1985); *Esler v. Safeway Stores, Inc.*, 77 F.R.D. 479, 483 (W.D.Mo.1978)).

The defendants note, however, that Mr. Van Bree sat at counsel table as the defendants' representative at trial, and more importantly, the defendants identified Mr. Van Bree as an expert witness and provided the plaintiffs with expert disclosures concerning Mr. Van Bree.

■■ The law allows costs to be taxed for "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." 28 U.S.C. § 1920. The court finds it perfectly reasonable for the plaintiffs to depose anyone listed by the defendants as an expert witness, regardless of whether or not the expert ultimately is called to testify by either side at trial. As the Eighth Circuit Court of Appeals noted in *Zotos v. Lindbergh School District*, 121 F.3d 356 (8th Cir.1997):

> " 'The determination of necessity must be made in light of the facts known at

the time of the deposition, without regard to intervening developments that later render the deposition unneeded for further use.' " *Barber v. Ruth,* 7 F.3d 636, 645 (7th Cir.1993) (quoting *Hudson [v. Nabisco Brands, Inc.],* 758 F.2d [1237,] 1243 [(7th Cir.1985)]). In other words, the "underlying inquiry is whether the depositions reasonably seemed necessary at the time they were taken." *Manildra Milling Corp. v. Ogilvie Mills, Inc.,* 76 F.3d 1178, 1184 (Fed.Cir. 1996) (citing 10 Charles A. Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure § 2676, at 351 (2d ed.1983)). [Additional citation omitted.]

*Zotos,* 121 F.3d at 356.

The plaintiffs represent that all the depositions listed in their Bill of Costs were "necessarily obtained for use in the case." (Doc. No. 88, ¶ 4) They point out other depositions were taken that were not included in their Bill of Costs. (*Id.*) The court finds the plaintiffs' representation to be credible, and finds Mr. Van Bree's deposition was "necessarily obtained for use in the case" and was not "purely investigative." *See Slagenweit v. Slagenweit,* 63 F.3d 719, 720 (8th Cir.1995) (*per curiam*). The court, therefore, overrules the defendants' objection to this expense.

### B. Dr. Hall's Trial Transcript

 The defendants next object to the plaintiffs' recovery of $260.00 for the trial transcript of Dr. Jerry Hall.[1] They argue the plaintiffs had two attorneys present during Dr. Hall's testimony, one of whom could take notes; the plaintiffs never referred to the transcript while examining any witnesses, during any hearings before the court, in any motions, or during closing argument; and the transcript was not necessary for use in the case. The court

agrees, and sustains the defendants' objection to this expense.

### C. J.B. Sevart's Air Fare

The defendants object to the plaintiffs' recovery of $753.50 for J.B. Sevart's air fare from Wichita, Kansas, to Sioux City, Iowa, to testify at trial. The defendants argue the plaintiffs have failed to show this was "the most economical rate reasonably available," as required by 28 U.S.C. § 1821(c)(1). (Doc. No. 88, p. 3) However, the defendants have provided the court with no evidence to dispute the reasonableness of this expense.

Section 1821 requires the production of a "receipt or other evidence of actual costs" in connection with a witness's air fare. The plaintiffs attached to their Bill of Costs a statement from Mr. Sevart for his time and expenses in connection with this case. Among the expense items, Mr. Sevart listed "Airfare" at a cost of $753.50. The court finds the defendants have failed to meet their burden to show this expense "is inequitable under the circumstances." *See Concord Boat, supra.* Accordingly, the court overrules the defendants' objection to this expense.

### D. Conclusion

The taxation of costs will be reduced by the amount of $260.00, as set forth above.

## II. MOTION FOR JUDGMENT AS A MATTER OF LAW OR TO AMEND THE JUDGMENT

On February 13, 2003, the defendants filed a motion and supporting brief (Doc. Nos. 83 & 84) seeking judgment as a matter of law on the plaintiff's general negligence claim. The plaintiffs resisted the motion and filed a brief on February 28,

---

1. The plaintiffs obtained a transcript only of the defendants' cross-examination of Dr. Hall.

(*See* Doc. No. 85)

2003 (Doc. Nos. 86 & 87). The defendants filed a reply brief on March 11, 2003 (Doc. No. 91). The court held telephonic oral arguments on the motion on April 2, 2003. Martin Spellman and Michael Figenshaw appeared for the plaintiffs. William A. Lynch and Eric E. Packel appeared for the defendants.

The defendants assert five grounds for their argument that there was insufficient evidence to support the verdict in the plaintiffs' favor. The court first will discuss the standard of review for the defendants' motion. Then, before turning to the defendants' individual arguments, the court will consider their underlying assertion that general negligence or *res ipsa loquitur* should not have been submitted to the jury as an alternate ground for relief in this case.

### A. Standard of Review

In reviewing a post-verdict motion for judgment as a matter of law,

> [w]e resolve all doubts in favor of the non-moving party and give that party the benefit of all reasonable inferences. *See Brown v. United Missouri Bank,* 78 F.3d 382, 387 (8th Cir.1996). "Judgment as a matter of law is appropriate only when all of the evidence points one way and is 'susceptible of no reasonable inference sustaining the position of the nonmoving party.'" *McKnight v. Johnson Controls,* 36 F.3d 1396, 1400 (8th Cir.1994) (quoting *White v. Pence,* 961 F.2d 776, 779 (8th Cir.1992)). Postverdict judgment as a matter of law is appropriate only where the evidence is entirely insufficient to support the verdict. *See Greaser v. State Dep't of Corrections,* 145 F.3d 979, 984 (8th Cir. 1998).

*Belk v. City of Eldon,* 228 F.3d 872, 877–78 (8th Cir.2000); *accord Top of Iowa Coop. v. Schewe,* 324 F.3d 627, 633 (8th Cir.2003) (citing *Belk*). With specific relevance to reviewing a jury verdict, "[j]udgment as a matter of law is only appropriate when no reasonable jury could have found for the nonmoving party." *Wilkins v. St. Louis Housing Auth.,* 314 F.3d 927, 932 (8th Cir.2002) (citing *Mattis v. Carlon Elec. Prods.,* 295 F.3d 856, 860 (8th Cir.2002)).

### B. Res Ipsa Loquitur Doctrine

Underlying the first four of the defendants' five grounds for their motion is the argument that general negligence or *res ipsa loquitur* should not have been submitted to the jury as an alternate theory of recovery in this case. The court believes preliminary consideration of this issue will facilitate discussion of the defendants' individual grounds for relief.

Prior to Iowa's adoption, in 1984, of the Comparative Fault Act, codified in chapter 668 of the Iowa Code, a plaintiff seeking to prove liability on the basis of *res ipsa loquitur* was required to show: (1) "the instrumentality causing the injury was under the exclusive control and management of the defendant when the negligent act occurred"; (2) "the accident was one that would not, in the ordinary course of events, happen without negligence on the part of the one having such exclusive control"; (3) if the defendant's exclusive control did not continue up to the time of the injury, then "there was no change in the condition of the instrumentality after it left defendant's control which could reasonably have caused the injury"; and (4) "the injury [was] caused without the fault of the injured party." *Sweet v. Swangel,* 166 N.W.2d 776, 778 (Iowa 1969) (citations and internal quotation marks omitted).

A plaintiff could "eliminate his own conduct as a cause of the injury" by proving, "by a mere preponderance of the evidence," that he did "nothing abnormal with the instrumentality causing the injury and [he] used it in the manner and for the purpose for which it was intended." *Id.* (citations omitted). Where a factual question existed as to whether the plaintiff's

actions contributed to the injury, "*res ipsa* [could] still be applied under proper instructions to the jury." *Id.* Whether *res ipsa loquitur* was applicable in a particular case was "to be determined from common experience alone and not from the evidence tending to prove a negligent act in the particular case." *Id.*

Iowa's adoption of the Comparative Fault Act changed the requirements for the application of *res ipsa loquitur.* The Act specifically provides:

> Contributory fault shall not bar recovery in an action by a claimant to recover damages for fault resulting in death or in injury to person or property unless the claimant bears a greater percentage of fault than the combined percentage of fault attributed to the defendants, third-party defendants and persons who have been released ..., but any damages allowed shall be diminished in proportion to the amount of fault attributable to the claimant.

Iowa Code § 668.3(1)(a). This section makes it clear that rather than barring recovery for a defendant's negligence when the plaintiff is partially at fault, the Act merely reduced a negligent plaintiff's recovery by the percentage of fault attributed to the plaintiff.

In discussing the effect of comparative fault statutes on the application of *res ipsa loquitur,* the North Dakota Supreme Court noted the majority of courts that have considered the issue

> have held that the adoption of comparative negligence in their respective States has abrogated the requirement that plaintiff establish lack of wrongful conduct on his own part before *res ipsa loquitur* may be applied. *See, e.g., Montgomery Elevator Co. v. Gordon,* 619 P.2d 66 (Colo.1980); *Mileur v. Briggerman,* 110 Ill.App.3d 721, 66 Ill.Dec. 443, 442 N.E.2d 1356 (1982); *Cramer v. Mengerhausen,* 275 Or. 223, 550 P.2d

740 (1976); *Cyr v. Green Mountain Power Corp.,* 145 Vt. 231, 485 A.2d 1265 (1984); *Turtenwald v. Aetna Casualty & Surety Co.,* 55 Wis.2d 659, 201 N.W.2d 1 (1972); *Turk v. H.C. Prange Co.,* 18 Wis.2d 547, 119 N.W.2d 365 (1963); *see also* W. Prosser & W. Keeton, Law of Torts § 254 (5th ed.1984).

*Victory Park Apartments, Inc. v. Axelson,* 367 N.W.2d 155, 159 n. 3 (N.D.1985).

■ This court believes that if faced with the issue head-on, the Iowa Supreme Court similarly would find a plaintiff is no longer required to prove that his own conduct did not contribute to the injury. Indeed, in *Graber v. City of Ankeny,* 616 N.W.2d 633 (Iowa 2000), the Iowa Supreme Court specified only two requirements for the application of *res ipsa loquitur.* The court observed:

> The doctrine of *res ipsa loquitur* is a rule of evidence that permits an inference that the defendant was negligent. *See Brewster v. United States,* 542 N.W.2d 524, 528–29 (Iowa 1996). Two elements must be present for the doctrine to apply: "(1) the injury is caused by an instrumentality under the exclusive control of the defendant, and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used." *Mastland, Inc. v. Evans Furniture, Inc.,* 498 N.W.2d 682, 686 (Iowa 1993). A party must produce substantial evidence of both elements to be entitled to an instruction on general negligence under the *res ipsa loquitur* doctrine. *Brewster,* 542 N.W.2d at 529.

*Id.,* 616 N.W.2d at 643. *See Bredberg v. Pepsico, Inc.,* 551 N.W.2d 321, 329 (Iowa 1996) ("[T]he intent and purpose of the comparative fault statute ... allows the fact finder to assign fault (*without explanation* ) to one or more parties claimed to have contributed to plaintiff's injuries." (Emphasis added)).

Explaining the requirements for the first element, the *Graber* court went on to explain:

> To satisfy this element, "[t]he injury must either be traced to a specific instrumentality or cause for which the defendant was responsible, or it must be shown that the [defendant] was responsible for all reasonably probable causes to which the accident could be attributed." W. Page Keeton et al., Prosser & Keeton on Torts § 39, at 248 (5th ed.1984).

*Id.*

▆▆▆ The inference of negligence permitted by the *res ipsa loquitur* doctrine is based on "the common experience of lay persons," and states "an obvious principle of circumstantial evidence: that the event must be such that in the light of ordinary experience [the event] gives rise to an inference that someone must have been negligent." *Brewster v. United States*, 542 N.W.2d 524, 530 (Iowa 1996) (internal quotation marks, citation omitted). A de-fendant's motion for directed verdict can only be successful "if the defendant has produced evidence that will destroy any reasonable inference of negligence, or so completely contradict it that reasonable persons could no longer accept it.... In other words, the defendant's rebutting evidence must be so strong that the court can say as a matter of law that *res ipsa loquitur* does not apply." *Id.*, 542 N.W.2d at 529–30 (internal quotation marks, citation omitted).

The court now will consider the defendants' individual arguments in support of their motion for judgment as a matter of law.

### C. Contributory Fault

▆▆▆ The defendants' argue the evidence was insufficient for "a reasonable jury to decide that Michael McGuire's injuries were not caused or contributed to by his voluntary actions, as required by the sixth proposition of Final Instruction No. 14.[2]" (Doc. No. 83, ¶ 1)[3] Specifically, the defendants argue that to recover on a gen-

---

**2.** Final Instruction No. 14, which is the subject of four of the defendants' arguments, instructed the jury as follows:

FINAL INSTRUCTION NO. 14 GENERAL NEGLIGENCE CLAIM

Michael McGuire claims Louisville Ladder Group is liable to him because of Davidson Manufacturing Corporation's general negligence. For Michael McGuire to prove his general negligence claim, he must prove all of the following eight propositions by the greater weight of the evidence:

*First,* Davidson manufactured or distributed the stepladder;

*Second,* Michael McGuire was injured using the stepladder;

*Third,* based on common experience, Michael McGuire's injuries reasonably would not have occurred if ordinary care had been used in manufacturing and distributing the stepladder;

*Fourth,* Davidson had exclusive control of the stepladder when the failure of ordinary care occurred;

*Fifth,* from the time the stepladder left the exclusive control of Davidson to the time of the incident that is the subject of this lawsuit, there were no substantial changes in the stepladder's condition that reasonably could have caused Michael McGuire's injuries;

*Sixth,* Michael McGuire's injuries were not caused by his voluntary actions;

*Seventh,* the failure to use ordinary care in manufacturing or distributing the stepladder was a proximate cause of Michael McGuire's damages; and

*Eighth,* the amount of Michael McGuire's damages, if any.

If Michael McGuire has failed to prove any of these propositions, then he is not entitled to recover on his general negligence claim. If Michael McGuire has proved all of these propositions, then he is entitled to recover on his general negligence claim, unless Louisville Ladder Group has proved Michael McGuire was more than 50% at fault, as explained in Final Instruction Numbers 15, 16, and 17.

(Doc. No. 72, pp. 18–19)

**3.** The plaintiffs argue the defendants failed to

eral negligence, or *res ipsa loquitur,* claim, a plaintiff must prove the injury is caused "without fault" of the injured party. They note the jury assigned Michael McGuire 50% of the fault that proximately caused his damages, and therefore "he did not meet his burden in showing that the accident was not caused by his voluntary actions, as required by the sixth proposition of Final Instruction No. 14." (Doc. No. 84, p. 7)

The defendants rely on three cases in support of their argument, each of which predates Iowa's adoption of the Comparative Fault Act. (*See* Doc. No. 84, pp. 7–9, citing *Sweet,* 166 N.W.2d at 778;) *Highland Golf Club v. Sinclair Refining Co.,* 59 F.Supp. 911, 914 (N.D.Iowa 1945); and *Fisher v. Minneapolis & St. L. Ry. Co.,* 199 F.2d 308, 311 (8th Cir.1952). As noted above, the Act abrogates the requirement that the plaintiff show his actions did not contribute to the injury.

In the present case, the court found sufficient evidence was introduced at trial to submit to the jury the question of whether the plaintiffs had proved the elements of their general negligence claim as defined in Final Instruction No. 14. It was a question for the jury, as the trier of fact, to determine whether the defendants were "responsible for all reasonably probable causes" for the plaintiff's injuries. The jury evaluated the evidence and concluded Michael McGuire had "done nothing abnormal" with the ladder, and had used the ladder "in the manner and for the purpose for which it was intended." The jury found that in their common experience, the accident "was one that would not, in the ordinary course of events, happen" absent the defendants' negligence. The court finds the jury's verdict "is consistent with

the intent and purpose of the comparative fault statute," and denies the defendants' motion with respect to their first claim for relief. *See Sweet, supra; Graber, supra; Bredberg, supra.*

### D. Ordinary Care

■■ The defendants argue the evidence was insufficient for a reasonable jury to conclude, as required by the third proposition of Final Instruction No. 14, that "based on common experience, Michael McGuire's injuries reasonably would not have occurred if ordinary care had been used in manufacturing and distributing the stepladder." (*See* Doc. No. 72, p. 18; Doc. No. 84, pp. 9–12)

The defendants argue, among other things, that the ladder in question was used without difficulty for five or six years, including the day preceding the accident. The court finds this is simply a matter of degree. It is the jury's province to decide at what point, if any, a product becomes old enough or has been used enough that negligence in manufacturing can no longer be the cause of the plaintiff's injuries.

The defendants argue further that the jury's verdict is inconsistent with the evidence. They point out the plaintiffs presented evidence that the accident occurred as a result of *both* a design defect *and* a manufacturing defect. The general negligence instruction, and the jury's verdict, relate only to a manufacturing defect; in fact, the jury specifically found there was no defect in the ladder's design. The defendants argue that because the plaintiffs submitted evidence that the injury was due to both a design defect and a manufacturing defect, Final Instruction 14, which only involves a manufacturing defect, was improperly given, and provided an improper ground for relief.

raise this ground for relief in their pre-verdict motions, and therefore they are not "renewing" their motion for judgment as a matter of law as required by Federal Rule of Civil Pro-

cedure 50(b). The court finds the defendants preserved this argument in their pre-verdict motion.

Federal Rule of Civil Procedure 8 allows a plaintiff to demand "[r]elief in the alternative or of several different types." Fed. R.Civ.P. 8(a). The comparable Iowa procedural rule is identical to the federal rule. *See* Ia. R. Civ. P. 1.403(1). In this case, the plaintiffs presented the jury with alternative theories of recovery relating to defects in both the design and the manufacture of the ladder. They presented evidence to support each of these theories, and at no time indicated they were electing to proceed on only one theory. *Cf. Bolinger v. Kiburz*, 270 N.W.2d 603 (1978) (discussing election of remedies doctrine). The plaintiffs' experts testified they could not pinpoint a single cause for the ladder's failure; however, they could point to both design defects and manufacturing defects. This is the precise type of case in which the Iowa Supreme Court would apply the *res ipsa loquitur* doctrine. *See Brewster*, 542 N.W.2d at 530 ("We do not allow *res ipsa loquitur* to apply 'where there is direct evidence as to the precise cause of the injury and all the facts and circumstances attending the occurrence appear.'") (quoting *Reilly v. Straub*, 282 N.W.2d 688, 694 (Iowa 1979)). "'The inference of negligence may arise either where a definite cause is known, or where the accident is more or less a mystery, with no particular cause indicated.'" *Id.* (quoting Prosser & Keeton, Law of Torts § 39, at 347–48).

The jury is permitted "to infer negligence from the facts, but the jury is not required to draw this inference. The jury simply weighs the circumstantial evidence but in the end may or may not accept it as sufficient as to negligence or causation." *Brewster*, 542 N.W.2d at 529. In this case, the jury weighed the evidence and concluded that although there was no design defect, the plaintiffs were entitled to recover on their general negligence claim.

As noted previously, under the comparative fault statute, the jury is permitted to assign fault "without explanation." *Bredberg, supra*. The court finds no fundamental inconsistency in the jury's verdict. Taking the evidence in the light most favorable to the plaintiffs, the court finds the jury reasonably concluded Michael McGuire's accident would not have occurred in the absence of some negligence in manufacturing. The court therefore denies the defendants' motion with respect to this claim for relief.

### E. Exclusive Control

The defendants next argue there was insufficient evidence for a reasonable jury to conclude the defendants had "exclusive control" of the ladder at the time of the negligence, as required by the fourth proposition of Final Instruction No. 14. (*See* Doc. No. 84, pp. 12–14) As discussed previously, when a defendant's exclusive control does not continue up to the time of the injury, the plaintiff "must also prove by a preponderance of the evidence there was no change in the condition of the instrumentality after it left defendant's control which could reasonably have caused the injury." *Sweet*, 166 N.W.2d at 778. *See Weyerhaeuser Co. v. Thermogas Co.*, 620 N.W.2d 819, 832–33 (Iowa 2001). The plaintiff "need not prove that the defendant had control of the instrumentality when the injury occurred[;] ... [t]he plaintiff need only show that the defendant controlled the instrumentality at the *time of the alleged negligent act.*" *Weyerhaeuser*, 620 N.W.2d at 832 (emphasis in opinion) (citing *Palleson v. Jewell Co-op. Elevator*, 219 N.W.2d 8, 13 (Iowa 1974)); *Graber*, 616 N.W.2d at 643 (plaintiff must show defendant "was responsible for all reasonably probable causes to which the accident could be attributed").

The evidence in this case was there had been no misuse or alteration of the ladder after it left the defendants' control. The

jury found the defendants controlled the ladder at the time of the negligent act, which the jury found occurred during the ladder's manufacture. The court finds this element of *res ipsa loquitur* was satisfied, and denies the defendants' motion with respect to this claim for relief.

### F. Change in Condition

■ The defendants next argue there was insufficient evidence for the jury to conclude no substantial changes occurred in the ladder's condition from the time it left the defendants' exclusive control up to the date of the accident, as required by the fifth proposition of Final Instruction No. 14.

The *Weyerhaeuser* court explained that in addition to showing the defendants had control of the instrumentality at the time of the alleged negligence,

> the plaintiff must show by a preponderance of the evidence (more likely than not) that (1) there was no change in the condition of the instrumentality, and (2) no intervening act that could have caused the event resulting in the injury.

*Id.* The defendants point to regular use of the ladder as an "intervening cause" that could have damaged the ladder and resulted in the injury, noting "Dr. Hall testified that there was a 'cumulative effect' of loading cycles that occurred during the six years between when the ladder was purchased (1993) and the accident (1999). He also admitted that the ladder's 'structure' changed with repeated use." (Doc. No. 84, p. 15)

The court found at trial, and continues to find, that this is a question of fact for the jury. The plaintiffs presented evidence regarding the limited use of the ladder, stating it was used approximately once a month for short periods of time, such as to change a lightbulb. They also presented evidence that the ladder was basically in the same condition as when it was purchased. Except for the break that occurred in the accident in question, the ladder looked to be in "like new" condition. The jury weighed this evidence against Dr. Hall's testimony and the defendants' argument that the ladder's condition had changed, and concluded otherwise, finding the plaintiffs had met their burden to show there had been no change in the ladder and no intervening act that could have resulted in the accident. The court find sufficient evidence existed to support the jury's verdict, and denies the defendants' motion with respect to this claim for relief.

### G. State of the Art Defense

■ The defendants argue there was insufficient evidence for a reasonable jury to conclude the defendants failed to use ordinary care, as required by Final Instruction No. 10.[4] Specifically, the defendants argue that because the jury found the defendants complied with the state of the art in manufacturing the ladder, the defendants could not have failed to use ordinary care as a matter of law, and therefore, the jury's finding that the defendants complied with the state of the art in manufacturing the ladder precluded a concurrent finding that the defendants were negligent. (*See* Doc. No. 84, pp. 16–18) Essentially, the defendants have raised the interesting issue of whether the statutory state-of-the-art affirmative defense is a complete defense to a general negligence

---

4. Final Instruction No. 10 instructed the jury as follows:

FINAL INSTRUCTION NO. 10 NEGLIGENCE
 "Negligence" means the failure to use ordinary care. Ordinary care is the care a reasonably careful person would use under similar circumstances. A party fails to use ordinary care, and therefore is negligent, if the party does something a reasonably careful person would not do under similar circumstances, or fails to do something a reasonably careful person would do under similar circumstances.
(Doc. No. 72, p. 13)

claim predicated upon negligent manufacturing.

A discussion of this issue must begin with section 668.12 of the Iowa Code, which codifies the state-of-the-art defense. The statutes provides as follows:

Liability for products—state of the art defense

> In any action brought pursuant to this chapter [*i.e.,* Chapter 668, Liability in Tort—Comparative Fault] against an assembler, designer, supplier of specifications, distributor, manufacturer or seller for damages arising from an alleged defect in the design, testing, manufacturing, formulation, packaging, warning, or labeling of a product, a percentage of fault shall not be assigned to such persons if they plead and prove that the product conformed to the state of the art in existence at the time the product was designed, tested, manufactured, formulated, packaged, provided with a warning, or labeled. Nothing contained in this section shall diminish the duty of an assembler, designer, supplier of specifications, distributor, manufacturer or seller to warn concerning subsequently acquired knowledge of a defect or dangerous condition that would render the product unreasonably dangerous for its foreseeable use or diminish the liability for failure to so warn.

On its face, the statute shields a defendant from liability for *defective* manufacturing when the manufacturer has proven its product conformed to the state of the art. Notably, the statute does not address *negligent* manufacturing. *See Olson v. Prosoco, Inc.,* 522 N.W.2d 284, 291 (Iowa 1994) ("[T]he statute is applicable only in situations where 'damages aris[e] from . . . alleged defects in products.'" (Quoting Iowa Code § 668.12.)) *Cf. Wright v. Brooke Group Ltd.,* 652 N.W.2d 159 (Iowa 2002) (drawing a distinction between strict liability and negligence principles in cases involving design and manufacturing defects). The distinction between defective and negligent manufacturing claims, although somewhat nebulous, is evident in the differences between statutory state-of-the-art defenses in various states. For example, Nebraska's state-of-the-art defense applies "[i]n any product liability action based upon *negligent or defective* design." Neb. Rev.Stat. § 25–21, 182 (emphasis added).

The instructions to the jury in the present case complied with both the letter and the spirit of the statute. Final Instruction No. 2 [5] informed the jury that the plaintiffs were seeking damages from the defendants on three theories: (1) design defect, (2) manufacturing defect, and (3) negligent manufacturing. Final Instruction No. 3 [6]

---

**5.** Final Instruction No. 2 instructed the jury as follows:

FINAL INSTRUCTION NO. 2 FAULT DEFINED

> "Fault" means one or more acts or omissions towards a person that, under the law, (1) would subject a party to liability for a design defect in a product, (2) would subject a party to liability for a manufacturing defect in a product, (3) would constitute negligent misuse of a product, or (4) are in any other measure negligent.
>
> Michael McGuire claims Davidson Manufacturing Corporation was at fault on three grounds: (1) for manufacturing or distributing a wooden stepladder that was defec-

tive in design; (2) for manufacturing or distributing a wooden stepladder that contained one or more manufacturing defects; and (3) for negligence in the manufacturing of a wooden stepladder.

> Louisville Ladder Group claims Michael McGuire was at fault due to his own negligence while using the stepladder.
>
> The mere fact that an incident occurred in which someone was injured does not mean anyone was at fault or negligent.

(Doc. No. 72, p. 4)

**6.** Final Instruction No. 3 instructed the jury as follows:

defined "manufacturing defect" as "a physical departure in the stepladder, as manufactured, from the stepladder's intended design, even if all possible care was exercised in manufacturing and distributing the stepladder." Final Instruction No. 9[7] defined "state of the art," and informed the jury that if the defendants "proved the stepladder was manufactured in conformity with the state of the art at the time it was manufactured, then Michael McGuire [was] not entitled to recover on his manufacturing defect claim."

In accordance with the instructions, and in conformity with the statute, the jury found the defendants were at fault on the plaintiff's manufacturing defect claim; the

fault was a proximate cause of Michael McGuire's injuries; but the defendants complied with the state of the art in manufacturing the stepladder. Accordingly, the plaintiffs were not entitled to recover on their manufacturing defect claim.

The problem in interpretation arises with the jury's determination that despite these findings, the plaintiffs nevertheless were entitled to recover on their negligent manufacturing claim. Final Instruction No. 10[8] defined negligence as "the failure to use ordinary care." Final Instruction No. 14[9] provided that if the jury found the defendants were negligent—that is, the defendants failed to use ordinary care in manufacturing or distributing the ladder—

FINAL INSTRUCTION NO. 3 DEFECTIVE PRODUCT

If the Davidson Manufacturing Corporation stepladder involved in this case contained either a design defect or a manufacturing defect at the time of its distribution, then it was a defective product. The terms "design defect" and "manufacturing defect" are defined as follows:

(a) *Design Defect.* The Davidson stepladder contained a design defect if: (1) a "reasonable alternative design" for the stepladder was available when the stepladder was manufactured; (2) the foreseeable risks of harm to a person using the stepladder would have been reduced or avoided if the stepladder had been manufactured in accordance with the alternative design; and (3) the failure to manufacture the stepladder in accordance with the alternative design rendered the stepladder not reasonably safe.

(b) *Manufacturing Defect.* The Davidson stepladder contained a manufacturing defect if there was a physical departure in the stepladder, as manufactured, from the stepladder's intended design, even if all possible care was exercised in manufacturing and distributing the stepladder.

(Doc. No. 72, p. 5)

7. Final Instruction No. 9 instructed the jury as follows:

FINAL INSTRUCTION NO. 9 STATE OF THE ART—MANUFACTURING DEFECT CLAIM

If Michael McGuire has established a manufacturing defect in the stepladder, you must consider whether the manner in which the stepladder was manufactured conformed to the "state of the art." The state of the art is the safest and most advanced technology and the most current scientific knowledge at the time the stepladder was manufactured that reasonably could have been employed to manufacture the stepladder.

In determining whether the stepladder was manufactured in conformity with the state of the art, you should consider whether the stepladder industry, using the technology and scientific knowledge that existed at the time, could feasibly, practically, and economically have manufactured a stepladder that would have prevented Michael McGuire's injuries while, at the same time, meeting the needs of stepladder users generally. Custom in the industry is not necessarily the state of the art.

If Louisville Ladder Group has proved the stepladder was manufactured in conformity with the state of the art at the time it was manufactured, then Michael McGuire is not entitled to recover on his manufacturing defect claim.

(Doc. No. 72, p. 12)

8. *See* note 4, *supra.*

9. *See* note 2, *supra.*

then the plaintiffs could recover on their general negligence claim.

The defendants argue that if the ladder was manufactured in accordance with the state of the art, they *ipso facto* used ordinary care in manufacturing the ladder. The court does not find these two concepts to be mutually exclusive, and returns once again to the concept of *res ipsa loquitur*. Here, the jury found the evidence showed the ladder was manufactured in accordance with the state of the art, the ladder did not change in condition from the time it left the defendants' exclusive control until the time of the accident, and Michael McGuire did not misuse or abuse the ladder, but despite all these things, the ladder broke, resulting in injuries to Michael McGuire. Based on their common experience, the jury concluded these facts gave rise to the inference that "someone must have been negligent." *Brewster,* 542 N.W.2d at 530. The jury found that "someone" to be the defendants. It is difficult to imagine a more appropriate application of the *res ipsa loquitur* doctrine.

There is no way the court or the parties can second-guess the jury's reasoning. For example, the jury may have determined the manufacturing processes were state of the art, but a human being who was executing a step in the state-of-the-art manufacturing process was negligent. Such distinctions focus on factual determinations that are the province of the jury, as the finder of fact. Furthermore, as noted previously, the jury was entitled to assign fault *without explanation. See Bredberg,* 551 N.W.2d at 329. On the facts of this case, the court is unable to say, as a matter of law, that the jury's verdict lacked a sufficient evidentiary basis.

Accordingly, the court denies the defendants' motion for judgment as a matter of law with respect to this claim for relief, and similarly denies the defendants' motion to amend the verdict.

### H. Conclusion

For the reasons discussed above, the defendants' motion for judgment as a matter of law, or to amend the judgment, is denied, on all grounds.

IT IS SO ORDERED.